RICHLEY, DIR. OF HIGHWAYS, APPELLANT, *v.* JONES ET AL., APPELLEES.

(No. 73-606—Decided April 24, 1974.)

*Mr. William J. Brown*, attorney general, *Mr. Donald J. Guittar* and *Mr. Thomas E. Louden*, for appellant.

*Messrs. Lewis & Lewis* and *Mr. Clyde E. Lewis*, for appellees.

CELEBREZZE, J. At the outset, this court must determine whether the decision in *New Way Family Laundry* v. *Toledo* (1960), 171 Ohio St. 242, applies to the facts herein. In that case, paragraph three of the syllabus held that:

"The construction of a divider strip in the middle of a highway resulting in the elimination of left turns from and into the abutting property and thereby permitting only right turns and requiring circuity of travel to leave or reach the opposite half of the highway does not constitute an actionable interference with the abutting property owner's right of ingress and egress."

Although that statement seems applicable, the appellees have succeeded in convincing the trial court and the Court of Appeals that it should not be applied in this case. Appellees argue that, in *New Way Family Laundry,* there was no taking of property, while in the cause before us there was a taking, and part of the take was to be used in construction of the median. They quote from the first sentence of the opinion in *New Way Family Laundry,* as follows:

"First it should be noted that this highway improvement project involved the appropriation of none of the plaintiff's property * * *."

From that language, appellees argue that *New Way Family Laundry* was not meant to apply when an appropriation is involved.

Appellees' second argument is that "every element entering into the question of value" must be taken into consideration in determining the amount of compensation. See *Sowers* v. *Schaeffer* (1951), 155 Ohio St. 454, 459, citing 29 Corpus Juris Secundum, 971, Section 136. It is fair to say that a prudent businessman would take such a change in traffic flow into consideration if he were considering a purchase. So, appellees argue, the change in flow should be taken into consideration in determining proper compensation in an appropriation proceeding.

An apparent conflict is thus presented to this court for the first time. The ordinary rule is that any change in traffic flow occasioned by placing medians in the road results from the exercise of the police power of the state.* Any damages that might result from the doing of a lawful act are noncompensable—*damnum absque injuria.* If we allow this damage to be introduced in evidence because there is a concurrent taking of land we are, in effect, allowing compensation for it. Since this court has not considered the problem, we look first to other jurisdictions.

---

*There is evidence in the record that the construction of the median strip was a part of a coordinated plan of action by the state in a proper exercise of the police power. The landowner has the burden of showing any capricious or unreasonable activity on the part of the state.

In *Painter* v. *Nebraska* (1964), 177 Neb. 905, 131 N. W. 2d 587, the state took part of the landowner's property in order to widen the street, while at the same time traffic islands were constructed which changed the traffic flow past the property. The trial court allowed evidence that the change in traffic direction caused by the construction of the medians resulted in damages to the remaining property. The reviewing court, at page 911, stated that:

"* * * The fact that the construction of the islands in the instant case was concurrent with the construction of the widened street is not a material factor. * * *

"* * * As to damages claimed by reason of a change in the flow of traffic by placing medians in the center of a street, they result from the exercise of the police power by the state and are noncompensable as being incidental to the doing of a lawful act. As such, they are wholly unrelated to the taking of the land for the purpose of widening the street and constitute no element of damage to the land remaining after the taking."

In *State* v. *Ensley* (1960), 240 Ind. 472, 164 N. E. 2d 342, a case with facts similar to those before us, the court determined that:

"In order to recover for the alleged impairment of their right of access appellees must suffer a particular private injury, and not merely an inconvenience or annoyance, even though it may be greater in degree than such as is suffered by the public generally."

In *State* v. *Fox* (1958), 53 Wash. 2d 216, 220, 332 P. 2d 943, the court, in construing the application of a limited-access highway statute, said:

"The statutory process by which an existing highway (RCW 47.52.011) becomes a limited access facility, is a combination of the exercise of eminent domain and the police power. * * * The state must compensate for property rights taken by eminent domain; damages resulting from the exercise of the police power are noncompensable. * * *"

Finally, in *Wolf* v. *Dept. of Highways* (1966), 422 Pa. 34, 42, 220 A. 2d 868, the Pennsylvania Supreme Court de-

cided a case with factual similarities to the one before us. The decision to reverse the trial court for allowing evidence of the kind complained of here was based upon two grounds: The damage was *damnum absque injuria* because Wolf still had a right of access to the highway and from the highway to his property; and, although there was some change in the traffic flow, "reasonable means of ingress to the property and egress from the property were fully pre-served."

Also, in support of this position, which is the same position taken by this court in *New Way Family Laundry, supra*, that court went on to say that even if this were a compensable interference because of some difficulty in ingress or egress caused by the median it still would not be considered for purposes of determining the compensation due for the *taking*. In the fact situation before the Pennsylvania court the "*taking* of a portion of the Wolf property bore no relationship to the construction and location of the medial dividers." The "injury" claimed was too remote to be considered as an element of damage in the taking. See 1 Nichols, Law of Eminent Domain (3 Ed.), Section 1.42 [7]; 2A Nichols, Section 6.4443[4]; Takings and the Police Power, 74 Yale L. J. 36.

Appellees argue that none of these cases is pertinent to the facts before us because in each of them the land taken was used for widening the highway while the median was built on the existing right-of-way. It is appellees' contention that a part of the take was used in the construction of the median strip, so that any damage to the residue is incident to the exercise of the power of eminent domain.

However, the rationale behind *New Way Family Laundry, supra*, applies to this cause. The nature of the claimed losses is usually referred to as consequential damages.

Consequential damages are generally noncompensable on the theory that: "* * * Whatever injury is suffered thereby is an injury suffered in common by the entire community; and even though one property owner may suffer in

a greater degree than another, nevertheless the injury is not different in kind, and is therefore *damnum absque injuria.*" *Robert Mitchell Furniture Co.* v. *C. C. C. & St. Louis R. R. Co.* (1900), 7 N. P. 639, *affirmed*, 65 Ohio St. 571. See also, 2 Nichols, Eminent Domain (3 Ed.), Sections 6.38 and 6.4; 2A Nichols, Eminent Domain (3 Ed.), Sections 6.4432 and 6.45; 1 Orgel, Valuation Under Eminent Domain (2 Ed.), Sections 3 and 4.

The problem arises when there is a partial appropriation and the owner is allowed to present evidence of the impaired condition of the land because of the appropriation. In such cases, some lower courts in the state have allowed evidence to be heard that would ordinarily pertain only to consequential damages, on the theory that such damages have become severance damages. See, *e. g., In re Appropriation for Hwy. Purposes* (1966), 6 Ohio App. 2d 6.

The anomaly is well presented in *Columbus* v. *Farm Bureau Cooperative Assn.* (1971), 27 Ohio App. 2d 197, 200: "Thus, the issue before this court is whether damages consequential to the construction of an improvement, which would be *damnum absque injuria,* in the absence of the taking of any of a property owner's property, become compensable damages to the residue where a portion of the property of such property owner is taken for the improvement."

The problem then revolves around our theory of just compensation. We usually define "market value" as the amount of money that a purchaser willing, but not obliged, to buy the property would pay to an owner willing, but not obliged, to sell, taking into consideration the reasonable uses to which the land may be put. But the landowner cannot profit because the state is exercising its power of eminent domain. The landowner is entitled to no special damages because he is compelled to part with his title.

In *New Way Family Laundry, supra,* at page 244, the court quoted from *State, ex el. Merritt,* v. *Linzell* (1955), 163 Ohio St. 97, in which the court discussed circuity of travel such as is now before us, as follows:

"Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an *inconvenience shared in common with the general public* and is necessary in the public interest to make travel safer and more efficient." (Emphasis added.)

The holdings in the lower courts in this cause have the effect of giving the landowner special damages. A neighbor who might have similar problems with traffic flow because of the construction of the median strip, but who has had no land taken by the state in connection with the project, will receive no recompense for whatever is done to his land. He has suffered an "inconvenience shared in common with the general public," which is *damnum absque injuria*.

Here, appellees have suffered that same "inconvenience," differing possibly in degree but not in kind. The fact that this loss is coincident with an appropriation of land in no way changes the noncompensable character of the damage.

For the foregoing reasons, the judgment of the Court of Appeals is reversed in part, and the cause remanded to the Court of Common Pleas, with instructions to modify its judgment accordingly.

*Judgment reversed in part.*

O'Neill, C. J., Herbert, Corrigan, Stern, W. Brown and P. Brown, JJ., concur.