CITY OF NORWOOD, APPELLANT, *v.*
FOREST CONVERTING COMPANY ET AL.,
APPELLEES.

*Mr. Robert G. Kelly,* city solicitor, and *Mr. John P. Seahill,* for appellant.

*Messrs. Frost & Jacobs, Mr. Pierce E. Cunningham* and *Mr. Michael L. Ciofi,* for appellees.

(No. C-830298 — Decided May 16, 1984.)

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County, Ohio.

The city of Norwood (Norwood) herein appeals from a judgment of the Court of Common Pleas of Hamilton County, Ohio, against it. The judgment awarded defendants-appellees (Forest Converting Company et al.) $170,000 for Norwood's appropriation of part of Forest Converting's property.[1] The genesis of the present action is Norwood's decision to attempt to alleviate traffic jams on Forest Avenue caused by trains using the railroad tracks crossing the roadway. Prior to Norwood's appropriation of Forest Converting's property, the railroad tracks were on the same level as the roadway. In order to prevent trains' use of the tracks from impeding automobile traffic on Forest Avenue, the post-appropriation plans resulted in a portion of Forest Avenue being graded down approximately thirty feet so that the roadway tunnelled under the railroad tracks. Concrete retaining walls were built on either side of the new Forest Avenue underpass.

Forest Converting owns a twenty-two thousand square foot triangular shaped lot — the eastern side of which abuts Forest Avenue. The building on the Forest Converting property occupies almost all the land available. Before Norwood began to make the aforementioned improvements to Forest Avenue, the Forest Converting property and building were at street level. The access to the only loading dock for the building is by way of Forest Avenue. When Forest Avenue and the loading dock were at approximately the same level, there was relatively easy ingress to and egress from the dock. However, a part of Forest Avenue which was graded down abuts the Forest Converting property. With the change in the grade of the roadway and the addition of a thirty-foot concrete retaining wall to support the land on either side of Forest Avenue, the access to Forest Converting's loading dock and to its property has been severely limited.

In addition, Norwood, pursuant to its city council's resolution, sought to appropriate a temporary easement on the

---

[1] Reference herein to property means real property.

subject property in order to facilitate the changes to Forest Avenue. "The * * * easement is a temporary easement for the purpose of constructing portion of a sidewalk, private drive and a temporary fire exit, said easement terminates upon completion and acceptance of construction."

Subsequent to passage of the Norwood City Council's resolution to appropriate the aforementioned interests in Forest Converting's property, Norwood and Forest Converting attempted to reach agreement on the amount due Forest Converting for appropriation of said interests. When a stalemate developed, Norwood (pursuant to R.C. 163.01 *et seq.*) commenced the instant action by filing its complaint against Forest Converting. In its complaint Norwood sought the following relief:

"That the Court cause said property to be appropriated to the public use of the City of Norwood in accordance with law, that a jury be impanelled to determine the compensation due Defendants, and that upon deposit of said amount the Court shall order possession of the property be awarded to the Plaintiff, City of Norwood, according to law."

At trial Norwood presented the testimony of two expert witnesses, who respectively determined that Forest Converting was entitled to $26,893 and $31,400 for Norwood's appropriation of the property and the resulting damages. Forest Converting's two expert witnesses, on the other hand, testified respectively that Norwood should pay Forest Converting $170,441 and approximately $200,000 in damages. The jury returned a verdict for $170,000 in Forest Converting's favor and the trial court entered judgment in conformity therewith. Norwood appeals from the judgment against it, complaining that the court below committed reversible error in five respects.

The first three assignments of error concern elements of loss, which Norwood claims the trial court incorrectly allowed Forest Converting's expert witnesses to include in their appraisals of the damages due. Norwood argues that the following three elements of loss (which correspond to the first three assignments of error) are not compensable in this appropriation action: (1) cracks and physical damage to Forest Converting's building caused by construction of the underpass; (2) loss of public parking spaces on Forest Avenue caused by the change in grade of the street and the construction of the concrete retaining wall; and (3) Forest Converting's loss of use of parking spaces on a third party's property, which property is not a subject of this appropriation action.

I

The determination of whether the cracks and physical damages to the building are compensable rests on our analysis of what interest(s), if any, Norwood appropriated from Forest Converting, and how the award of damages is calculated once it has been determined that an interest in property has been appropriated.

When all of one's property is appropriated, the rule is simple — the property owner is entitled to receive the fair market value of his entire property interest. However, when there is only a partial taking of one's property, a more complicated formula is used to determine the remedy. The rule in Ohio has long been that "[w]hen there is *no taking* [of property] altogether or *pro tanto*, damages consequential to the taking of *other* property in the neighborhood, or to the construction of the improvement, are not recoverable; under such circumstances, loss suffered by the owner is *damnum absque injuria.*" *Smith* v. *Erie Rd. Co.* (1938), 134 Ohio St. 135 [11 O.O. 571], paragraph two of the syllabus (em-

phasis added).[2] Therefore, when no property is taken, the property owner is not entitled to any recovery in an appropriation action. We emphasize that this rule applies to an appropriation action.

Conversely, "consequential damages, which would be *damnum absque injuria* in the absence of a taking, may be compensable [as] damages to the residue [*i.e.,* the property not taken] in the event of a taking of a *portion* of an owner's property." *Columbus* v. *Farm Bureau Cooperative Assn.* (1971), 27 Ohio App. 2d 197, 202 [56 O.O.2d 382] (emphasis added). If Norwood in making its improvements to Forest Avenue took a property interest of Forest Converting, which it did, the doctrine of *damnum absque injuria* is inapplicable and Forest Converting is entitled to recover consequential damages. Cracks and other physical harm to Forest Converting's building fall within the ambit of consequential damages.

Norwood took property interests of Forest Converting in two ways. Norwood's appropriation of a temporary easement on Forest Converting's property constituted one form of taking, and its change in the grade of Forest Avenue, which rendered the buildings thereon substantially less convenient of access, constituted the other form of taking.

We initially focus upon the temporary easement.[3] In this case, the easement is the right of one property owner (Norwood), by virtue of its ownership, to use the property of another (Forest Converting). Prior to the appropriation of the easement, Forest Converting had exclusive right to use its own property. Afterwards, however, Norwood, by virtue of its easement, had taken away Forest Converting's sole right to the full use of its property. For there to be a "taking" which will defeat application of the doctrine of *damnum absque injuria,* all that need occur is *an* appropriation of an interest in the property of the party claiming damage. An easement clearly is a property interest; it is the impingement on one's right to the exclusive use and enjoyment of his property. Norwood's appropriation of an easement

---

[2] *Damnum absque injuria* means "[l]oss, hurt, or harm without injury in the legal sense, that is, without such breach of duty as is redressible by an action." Black's Law Dictionary (Rev. 4 Ed. 1968) 470. Of course, *damnum absque injuria* does not preclude recovery for a tort justifying an independent action by a property owner.

[3] In *Lucas* v. *Carney* (1958), 167 Ohio St. 416, 423 [5 O.O.2d 63], Justice Stewart addresses the issue of what constitutes a "taking" of property so as to entitle the property owner to compensation from the governmental body exercising its power of eminent domain:

"In the case of *Smith* v. *Erie Rd. Co., supra,* the first paragraph of the syllabus reads:

" 'Under Section 19, Article I, of the Constitution, which requires compensation to be made for private property taken for public use, any taking, whether it be physical or merely deprives the owner of an intangible interest appurtenant to the premises, entitles the owner to compensation.'

"In the opinion, Judge Williams quoted from the case of *City of Mansfield* v. *Balliett,* 65 Ohio St., 451, 63 N.E., 86, 58 L.R.A., 628, as follows:

" 'The value of property consists in the owner's absolute right of domain, use, and disposition for every lawful purpose. This necessarily excludes the powers of others from exercising any dominion, use or disposition over it. Hence, any physical interference by another, with the owner's use and enjoyment of his property, is a taking to that extent. To deprive him of any valuable use of his land is to deprive him of his land, *pro tanto.* So that, the principle of the Constitution is as applicable where the owner is partially deprived of the uses of his land, as where he is wholly deprived of it. Taking a part is as much forbidden by the Constitution as taking the whole.' "

(even though temporary in nature) constitutes a taking of property which makes inapplicable *damnum absque injuria.*

Addressing the second property interest which Forest Converting claims Norwood appropriated (*i.e.,* the limitation of Forest Converting's access to its property), we find the following passage from *State, ex rel. McKay,* v. *Kauer* (1951), 156 Ohio St. 347, 351 [46 O.O. 204], to be dispositive:

"Since an early day, it has been the law of this state that an owner of real property has an easement in the public street on which his property abuts, as an appurtenance thereto; and that if a substantial change of grade in the street upon which the property abuts renders the buildings thereon less convenient of access there is an appropriation *pro tanto* of the property right in the easement for which compensation may be required."

Norwood in the instant case has so appreciably changed the grade of Forest Avenue that Forest Converting's access to its loading dock has been substantially hindered and there has been a *pro tanto* taking of its property. Resultantly, *damnum absque injuria* is inapplicable.

Once there has been a taking of property, the owner is entitled to a remedy consisting of two elements — "compensation" for the property actually taken and "damages" for injury to the property which remains after the taking, *i.e.,* the residue. Compensation and damage to the residue are two distinct concepts. The difference is explained as follows:

" 'Compensation' means the sum of money which will compensate the owner of the land actually taken or appropriated; that is, it is the fair market value of the land taken, irrespective of any benefits that may result to the remaining lands by reason of the construction of the proposed improvement. 'Damages,' in the strict sense in which

the term is used in an appropriation proceeding, means an allowance made for any injury that may result to the remaining lands by reason of the construction of the proposed improvement, after making all permissible allowances for special benefits, and the like, resulting thereto. 38 Ohio Jurisprudence 3d (1982) 154-155, Eminent Domain, Section 103.

In the instant case, compensation covers Norwood's payment for the fair market value of the temporary easement it appropriated from Forest Converting. All other amounts due Forest Converting from Norwood (including cracks and physical damage to the building, if they are compensable) must come under the heading of damage to the residue. Damage to the residue is measured by the difference between the pre-appropriation fair market value of all of Forest Converting's property and both the fair market value of the temporary easement and the post-appropriation fair market value of Forest Converting's remaining property.

In determining both pre- and post-appropriation fair market value, "every element that can fairly enter into the question of value, and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered * * *." *In re Appropriation for Hwy. Purposes* (1968), 13 Ohio App. 2d 125, 138 [42 O.O.2d 232]. The record reflects that prior to the change in grade of Forest Avenue, Forest Converting's building was structurally sound. However, after the digging on Forest Avenue began, the supporting ground for the building was pulled away and the building's footings were exposed. As a result, the floor and walls cracked and parts of the building itself slipped.

Obviously, the difference between the pre- and post-appropriation conditions of the building are relevant factors which a prudent business person would

consider before purchasing Forest Converting's property. Since there was a taking of Forest Converting's property, and since the changed condition of the building due to the appropriation had an effect on the value of the residue, introduction of testimony concerning damages to the building and inclusion by the experts of changes to the building in their calculation of the damage to the residue were proper.[4] The first assignment of error is overruled.

## II

Norwood's second assignment of error requires us to consider the issue of whether the elimination of public parking spaces on Forest Avenue due to the change in its grade is a proper element to include in a calculation of the damage to the residue. As discussed previously, when there is a partial taking of one's property, the owner is entitled to compensation for the property taken and damages to the residue. Since Forest Converting has no property interest in the parking spaces on the street which abuts its property, it is not entitled to compensation for the loss of those spaces. If loss of public on-street parking spaces is to be included in Forest Converting's remedy, it must come under the calculation of damages to the residue of Forest Converting's property.

Forest Converting argues that the loss of the parking spaces due to the change in grade of the street had a negative impact on the fair market value of its non-appropriated property and that therefore it was a proper *element of damage to the residue* for an appraiser to consider in determining pre- and post-appropriation fair market values of the property. The presence of public parking on a street which abuts property is one element a prudent buyer might consider in valuing that property. However, a prudent buyer in his valuation would also have to consider both the possibility that the government could at any time eliminate the public's right to park on the street without compensating the abutting property owner, and even the probability that the government would act in such a manner.

By its very nature, the value associated with the presence or absence of public on-street parking is so limited and indeterminate that it generally should be assigned no worth in either the pre- or post-appropriation valuations of the subject property. Forest Converting's contention that the loss of public parking is an element of damage to the residue for which it is entitled to relief is incorrect.

"Parking * * * is a subject within the scope of the police power of the state or its subdivisions. The abutting property owner has no property right in any specific parking regulation and, hence, its change does not produce compensable damage. To the extent that parking regulations existing on the date of the take might be considered as bearing on the market value on the day of the take, they would be admissible, balanced again by the weight to be given the negative element of the right of the state or its subdivisions to change these regulations at any time and the probability or improbability of such change.

[4] "Where part of a parcel of land is taken by eminent domain, the owner is not restricted to compensation for the land actually taken; he is also entitled to recover for the damage to his remaining land. The limitations on the right to recover damages to the remaining property resulting from the exercise of the power of eminent domain are that such damages must be actual and real and not merely speculative or contingent, proximate and not remote, reasonable, and appreciable." 38 Ohio Jurisprudence 3d (1982) 260-261, Eminent Domain, Section 181.

*In re Appropriation for Hwy. Purposes, supra,* at 150.

We reach the same result as did the Third Appellate District in *In re Appropriation for Hwy. Purposes,* but do so for different reasons. We agree that since public on-street parking is a matter within the police power of the state, its change does not result in compensable damage for the abutting property owner. However, we feel it is more logical not to include the value associated with the presence or absence of on-street parking in either the pre- or post-appropriation valuation of the property.[5]

If Norwood had eliminated public parking on Forest Avenue prior to any appropriation of Forest Converting's property, there would be no issue to resolve. Assuming *arguendo* that Norwood, in the exercise of its police power, had eliminated public parking on Forest Avenue prior to the appropriation, Forest Converting would not have been entitled to compensation because it had no property interest in the public parking. Likewise, Forest Converting would not have been entitled to recover any damages (measured by the decline in its property value) from Norwood because the city, exercising the discretion it had always had, decided to eliminate public parking on Forest Avenue. Forest Converting now seeks recovery for that same decline in property value merely because the change in parking regulations coincided with Norwood's appropriation of some of its property. A difference in the timing of the alterations of Forest Avenue's parking regulations should not dictate whether recovery should be had.

Both of Forest Converting's expert witnesses, over Norwood's objections, included the loss of public parking on Forest Avenue in their calculation of damages to the residue. Insofar as the court below admitted such testimony, it committed error.

Forest Converting argues that, even if it were error for the court below to allow the loss of public on-street parking into evidence as a compensable element of damage to the residue: (1) the error is not prejudicial; or in the alternative, (2) the proper remedy is *remittitur,* not reversal. The first prong of Forest Converting's argument is grounded in the long standing rule that:

"Where a general verdict is returned for one of the parties, and the mental processes of the jury are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of the prevailing party, and, where a single determinative issue has been presented free from error, error in presenting another issue will be disregarded." *Centrello* v. *Basky* (1955), 164 Ohio St. 41 [57 O.O. 77], paragraph four of the syllabus.

The single determinative issue in this case is the amount of money to which Forest Converting is entitled for Norwood's appropriation of the property. Improper inclusion of loss of on-street public parking in the calculation of the amount due means that the single determinative issue has not been presented free from error. As a result, the trial court's improper admission of the evidence taints the general verdict and constitutes prejudicial error.

The second prong of Forest Converting's argument, that we should enter a *remittitur,* would require us to engage in unsupportable speculation. Nowhere

---

[5] The Third Appellate District approach is to allow inclusion of the value of the presence of on-street parking in the pre-appropriation valuation of the property, and then not to diminish the post-appropriation valuation of the property by any loss associated with a change in on-street parking regulations.

in the record before us is there evidence of the portion of damages attributable to the wrongly included element of loss of public on-street parking. Forest Converting's expert witnesses, both of whom included loss of on-street parking in their calculation of damages, testified as to lump sum damages. Since there is no evidentiary basis upon which to enter a *remittitur*, we are unwilling to do so. Norwood's second assignment of error is sustained and warrants reversal of the trial court's judgment.

## III

The third assignment of error, which pertains to Forest Converting's loss of use of six parking spaces on neighboring property as an element of damages, merits analysis paralleling that given the second assignment of error. Both of Forest Converting's experts, over Norwood's objections, were allowed by the court below to include the loss of the six parking spaces as one of the elements of damage to the residue for which Forest Converting was entitled to recover.

Forest Converting offers no proof in the record before us that it possessed anything rising to the level of a property interest in the neighboring real estate. Robert Lojinger, the owner of Forest Converting, testifies that he had "an arrangement" with the neighboring property owner for parking. Elsewhere in the record Forest Converting's experts state that Forest Converting and the neighbor had an "agreement" and a "deal." The most that Forest Converting has proved with such nebulous terminology is that it has a license, revocable at its neighbor's will, to use the neighbor's land for parking.

A licensee has no right to the continued existence of a license. The licensor may at any time revoke the license without compensating the licensee. Therefore, any valuation of a license would have to take into account both the possibility that the license could be eliminated without compensation, and the probability that the license would be eliminated. As is the case with the valuation of the presence or absence of public on-street parking, the value associated with a license revocable at will is so obscure that it should generally not properly be a part of the calculation of the damage to a property owner's residue.[6] Since the court below improperly allowed Forest Converting's expert witnesses to include loss of the parking spaces on neighboring land in their calculation of damage to the residue, it committed error.

Nonetheless, Forest Converting reasserts that the error was not prejudicial, or in the alternative, that the proper remedy is *remittitur*, not reversal. We again disagree with Forest Converting's contentions, citing the rationale we used in Part II of this opinion. The third assignment of error is well-taken.

## IV

The fourth error which Norwood claims occurred in the proceedings below concerns the following question by Forest Converting's counsel to Robert Garfield, the second of Forest Converting's expert witnesses to testify:

"Q. Let me ask you this then. I want you to assume, I am going to ask you kind of a hypothetical question. I want you to assume that the market value of the property before this appropriation * * *. I think everyone is in agreement, even Norwood witnesses, that the value of this building here is $300,000. I want you to assume that is true. Assuming that fact are you able to form an opinion as to what the fair

_____
[6] Since a license revocable at will does not rise to the level of a property interest, its loss is not something for which *compensation* may be awarded in an appropriation action.

market value of the building would be after the appropriation and after all these problems we have just discussed?"

Norwood objected to the question on the ground that the expert "has to know the value [of the subject property] before and after; he can't assume it by counsel's statement." The trial court overruled the objection and permitted Garfield to answer the question. Norwood, on this appeal, reasserts the argument it made at trial in support of its objection.

Norwood's argument is without merit. Evid. R. 703 states:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

Prior to Forest Converting's asking the hypothetical question at issue here, Forest Converting's first expert witness, William H. MacConnell, had testified that the pre-appropriation fair market value of the property, as determined by three different approaches to value, was: $336,000; $263,000; or $300,000. Under Evid. R. 703, Garfield's opinion on the post-appropriation fair market value of Forest Converting's property can properly be based on MacConnell's testimony that the pre-appropriation fair market value of the property was $300,000 — testimony which was already part of the evidence of the case when Garfield testified.

Even if it were error to allow Garfield to assume that the pre-appropriation fair market value was $300,000, it was non-prejudicial error beyond a reasonable doubt. Besides MacConnell's testimony corroborating a $300,000 pre-appropriation fair market value, Norwood's two expert witnesses assigned Forest Converting's property a pre-appropriation value of $305,600. The fourth assignment of error is feckless, and is accordingly overruled.

## V

Norwood's final assignment of error deals with Forest Converting's statement in closing argument that the project cost of the underpass is $3.6 million. Norwood contends that the trial court committed reversible error in allowing Forest Converting, over objection, to reveal the project cost to the jury.

Early in closing argument Forest Converting's counsel stated, "You all remember what happened is that the City of Norwood exercised its power of eminent domain, decided to spend 3.6 million dollars to build an underpass along Forest Avenue." Norwood did not object to the above statement. Only much later in Forest Converting's argument, when counsel stated that Norwood is "spending 3.6 million dollars to put the underpass in here," did Norwood object. Since both statements convey an identical message, and Norwood objected to only the latter one, we can not find that Norwood timely objected to Forest Converting's remarks.

The standard enunciated in paragraph one of the syllabus in *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31 [44 O.O.2d 14], is dispositive of the fifth assignment of error:

"Except where counsel, in his opening statement and closing argument to the jury, grossly and persistently abuses his privilege, the trial court *is not required to intervene sua sponte* to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct. Ordinarily, in order to support a reversal of a judgment on the ground of misconduct of counsel in his opening statement and closing argument to the jury, it is necessary that a proper and timely objection be made to the claimed improper remarks so that the court may take proper action thereon." (Emphasis supplied.)

Norwood's failure to timely object, together with the fact that the remarks

about the project cost do not amount to a gross and persistent abuse of privilege by Forest Converting's counsel, mandate that we reject Norwood's final assignment of error.

However, since the second and third assignments of error are sustained, the judgment of the trial court is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

PALMER, P.J., KEEFE and BLACK, JJ., concur.