HURST, Ohio Director of Transportation,

v.

STARR et al., Appellees.

[Cite as *Hurst v. Starr* (1992), 79 Ohio App.3d 757.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1149.

Decided May 5, 1992.

*Lee Fisher,* Attorney General, *Ronald H. Snyder* and *Frederick C. Schoch,* Assistant Attorneys General, for appellant.

*William W. Brown,* for appellees Harry M. Starr and Helen M. Starr.

*Michael Miller*, Prosecuting Attorney, and *Phillip M. Walther*, Assistant Prosecuting Attorney, for appellee Franklin County Treasurer.

---

McCORMAC, Judge.

Plaintiff-appellant, Bernard B. Hurst, Director of Transportation for the state of Ohio ("ODOT"), appeals the judgment of the Franklin County Court of Common Pleas which awarded defendants-appellees, Harry M. and Helen M. Starr, $14,125 due to appellant's appropriation of a portion of appellees' residential property for a highway construction project. Appellant's two assignments of error pertain to that portion of the judgment which awarded appellees $10,000 for damages to appellees' residual property. Appellant's assignments of error state:

"ASSIGNMENT OF ERROR NO. 1

"The trial court erred in instructing the jury that it could consider the elements of inconvenience, danger, noise and interference with the enjoyment and use of the defendants-appellees' property as a result of the highway improvement in determining whether defendants-appellees had suffered damage to the residue of their property as a result of plaintiff-appellant's appropriation of part of their property.

"ASSIGNMENT OF ERROR NO. 2

"The trial court erred in permitting defendants-appellees to present evidence regarding the future traffic projections for the highway after the highway improvement project which gave rise to this appropriation proceeding."

Appellees' residence faces State Route 16, also known as Broad Street, in Blacklick, Ohio. Appellees' property is zoned for residential use. Appellees have resided in this rural residential location for thirty-five years. By 1990, however, several housing developments existed in the neighborhood, and a new subdivision was under construction well within one mile of appellees' home. Moreover, the new Limited, Inc., corporate headquarters and distribution center, located directly east of appellees' residence, already employed one thousand three hundred of its projected three thousand five hundred employees.

On December 5, 1990, ODOT filed a complaint pursuant to R.C. 163.04 to permanently appropriate a twenty-two-foot-wide strip of appellees' front yard, which equaled ten percent of appellees' residential property, for purposes of widening Broad Street from two to five lanes. The strip included a public right-of-way already used by ODOT for the existing two-lane road. The net acreage of the additional land permanently appropriated was .05 acres, valued

by ODOT at $2,450. The permanent appropriation reduced appellees' setback from ninety-five to seventy-two feet and, thus, diminished their front yard by twenty-five percent.

ODOT denied the existence of any compensable damage to the residue of appellees' land. Appellees' appraiser, however, valued the land permanently appropriated at approximately $4,400 and calculated damages to the residue equal to twenty percent of the fair market value of the entire parcel prior to the take, or $17,600.

Prior to trial, the trial judge granted ODOT's motion *in limine* to exclude, among other things, "all evidence that due to the highway improvement, the subject property has or will sustain injury or damage to said property or to the residue of the property due to increased noise, vibration, fumes, dust, litter or inconvenience." The memorandum in support of appellant's motion clarified that the exclusion request pertained to all evidence that completion of the highway construction project produced increased noise, vibration, etc., to appellees' residue, including such damages that occurred only because of the construction activity itself.

Appellees' opening statement, to which appellant objected, nevertheless referred to "proximity damages" as relevant to the jury's determination of the amount of damages compensable for injury to appellees' residual property. Appellees defined proximity damages as those damages which appellees suffered because the twenty-two-foot reduction of their setback placed their house closer to Broad Street. Specifically, appellees' opening statement referred to evidence of increased noise, danger and inconvenience to their residue caused by increased traffic over Broad Street. Appellees' position was that increased traffic flow was proximity damage which resulted from the addition of three lanes to Broad Street. Moreover, appellees claimed that the twenty-five percent reduction in their setback, in itself, produced a twenty percent decline in the fair market value of their residue.

Appellees requested and received, over objection, a special jury instruction that the proximity of appellees' residence to a five-lane highway and the consequences of increased traffic over Broad Street was relevant to the jury's determination of the amount of damages to appellees' residue.

Appellant's first assignment of error specifically attacks the court's special instruction to the jury, which stated in its entirety:

" * * * I charge you that in considering whether or not the residue of the property has sustained any damages, that where there is an actual partial taking of private property for a public use which creates elements of inconvenience, danger, noise and interference with the enjoyment and use of the landowner's property, particularly affecting its market value, such elements

may be considered in determining the market value of the residue and indirectly the damages thereto."

In its first assignment of error, appellant primarily argues that the instruction did not fully state the law regarding recovery of damages to a landowner's residual property in an appropriation proceeding as announced by the Ohio Supreme Court in *Richley v. Jones* (1974), 38 Ohio St.2d 64, 67 O.O.2d 78, 310 N.E.2d 236, and its progeny. Consequently, appellant maintains that irrelevant and prejudicial evidence of damages was improperly admitted at trial. Specifically, in its second assignment of error, appellant cites appellees' evidence of traffic projections as irrelevant and prejudicial.

Initially, we note that R.C. 163.14 is the statute which provides compensation to landowners for property permanently appropriated by a public agency pursuant to its power of eminent domain, as well as money damages for consequential injury to their remaining property, *i.e.*, the residue. The first requirement for any monetary recovery, therefore, is always that an actual taking of property has occurred pursuant to Section 19, Article I of the Ohio Constitution. If none of a landowner's property has been taken, he cannot recover either compensation or damages for any hardships suffered by reason of the incidental changes in his neighborhood.

In this case, it is unequivocal that there was a partial taking of appellees' real property for road improvement and that an appropriation proceeding was required by R.C. 163.04 to ascertain the amount of appellees' compensation for the value of the land taken and damages, if any, to the residue.

The basic principles concerning the amount of compensation and damages when there is a partial taking of one's property are well stated in the case of *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 16 OBR 481, 476 N.E.2d 695. As stated therein:

"Once there has been a taking of property, the owner is entitled to a remedy consisting of two elements—'compensation' for the property actually taken and 'damages' for injury to the property which remains after the taking, *i.e.*, the residue. Compensation and damage to the residue are two distinct concepts. The difference is explained as follows:

" ' "Compensation" means the sum of money which will compensate the owner of the land actually taken or appropriated; that is, it is the fair market value of the land taken, irrespective of any benefits that may result to the remaining lands by reason of the construction of the proposed improvement. "Damages," in the strict sense in which the term is used in an appropriation proceeding, means an allowance made for any injury that may result to the remaining lands by reason of the construction of the proposed improvement,

after making all permissible allowances for special benefits, and the like, resulting thereto. * * *'" *Id.* at 415, 16 OBR at 485, 476 N.E.2d at 700.

■ In the instant case, compensation covers the state's payment of $4,125 for the fair market value of the strip of land actually taken from the front of appellees' property. Damages to the residue is measured by the difference between the pre-appropriation and post-appropriation fair market value of the residue.

The test for determining fair market value is as follows:

"In determining both pre- and post-appropriation fair market value, 'every element that can fairly enter into the question of value, and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered * * *.' *In re Appropriation for Hwy. Purposes* (1968), 13 Ohio App.2d 125, 138 [42 O.O.2d 232, 239, 234 N.E.2d 514, 523] * * *." *Norwood v. Forest Converting Co., supra,* 16 Ohio App.3d at 415, 16 OBR at 486, 476 N.E.2d at 701.

■ There is sometimes confusion whether consequential damages arising from a loss of market value from the increased noise or traffic of an enlarged highway are compensable. Properties located in the vicinity of the highway, even those where there is no actual take of the property, may suffer a loss of market value to some extent. However, if there has been no taking of a person's property, there is no right to compensation or damages. Under such circumstances, the loss suffered by the owner has been described as *damnum absque injuria*. *Smith v. Erie RR. Co.* (1938), 134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310; *Norwood v. Forest Converting Co., supra,* 16 Ohio App.3d at 413, 16 OBR at 484, 476 N.E.2d at 699. However, "consequential damages" which would be *damnum absque injuria* in the absence of a taking may be compensable as damages to the residue in the event of a taking of a portion of an owner's property. *Columbus v. Farm Bureau Cooperative Assn.* (1971), 27 Ohio App.2d 197, 202, 56 O.O.2d 382, 385, 273 N.E.2d 888, 892; *Norwood v. Forest Converting Co., supra,* 16 Ohio App.3d at 414, 16 OBR at 484, 476 N.E.2d at 699. That principle is consistent with that claimed to be supported by substantial authority in *Masheter v. Yake* (1967), 9 Ohio App.2d 327, 38 O.O.2d 384, 224 N.E.2d 540, when the court stated:

"There is substantial authority that when there is an actual partial take of private property for a public use, which public use creates elements of personal annoyance and inconvenience such as set forth in the foregoing instruction, which particularly affect the market value of the residue of the property, such elements may be considered in determining the market value of

the residue and indirectly the damages thereto. * * *" *Id.* at 331, 38 O.O.2d at 387, 224 N.E.2d at 543.

In this case, there was a partial taking of appellees' property and, according to appellees' expert, there was damage to the residue by virtue of placing appellees' residence closer to a highway, their setback having been reduced by twenty-five percent by virtue of the partial take.

In summary, when there is a partial take, damage to the residue may properly be considered in accordance with the fair market value rule, despite the fact that other property owners located in the vicinity from whom no land was taken may not recover any damages. If a special-circumstance rule is to be used, it applies because the special circumstances are that part of the property owners' land was taken, leaving a damaged residue. Those special circumstances do not apply to the property owners from whom no land was taken, since their property remained intact. It is a matter of public policy that compensation stop at some reasonable place to limit the cost to the public. Thus, there is no right to compensation if the damages are those generally shared by many property owners whose property has not been taken.

There are some exceptions to recovery of damages to the residue even when there has been a partial taking. In *Richley v. Jones, supra,* the Supreme Court found that the construction of a median strip on land appropriated for highway purposes which restricted left-hand turns into a business property was not a compensable damage to the residue because it was placed there by the proper exercise of police power which was unrelated to the taking of the land for the purpose of widening the street. In other words, the placing of the median strip could have been done, with or without a take, at the same time or at a later time under the police power of the state. Hence, although the median strip affected the market value of the property, it was irrelevant to the issue of damages to the residue.

Another exception to recovery for damages to the residue is elements of damage resulting from the construction itself. Elements of annoyance, noise, inconvenience and interference of temporary duration during construction of an improvement and common to the public are not recoverable as damages in an appropriation action. *Colonial Furniture Co. v. Cleveland Union Terminal Co.* (1934), 47 Ohio App. 399, 191 N.E. 903. The reason is that these elements are not permanent in nature as they do not last beyond the completion of the project and have no effect on the market value of the property before the improvement was commenced and no effect upon the market value of the residue after the improvement was completed.

In *Masheter v. Yake, supra,* the court found that, in arriving at an amount of damages to the residue in an appropriate case, the jury can weigh all reasonable factors that fairly enter into the question of value, including elements of personal annoyance, convenience, danger and disadvantage. The trial court's special instruction reasonably states the rule to be applied to enable the jury to properly evaluate the damage to the residue.

Appellant's first assignment of error is overruled.

■ Appellant's second assignment of error challenges the admission of expert testimony of traffic flow projection as inadmissible to prove damages to appellees' residue. Appellees' appraiser, Robert R. Garrison, testified that ODOT's projected traffic surveys indicate that traffic will more than double in the street past appellees' residence within the next twenty years. Garrison testified that the property's fair market value would decrease in the mind of an average buyer shopping for a suburban home as a direct consequence of the change in the nature of Broad Street from a two-lane rural road upon which approximately sixteen thousand cars travel per day to a five-lane highway accommodating about thirty-eight thousand cars each day. According to Garrison, the widening of the road to accommodate the increased traffic necessarily produced noise as well as inconvenience and danger in exiting appellees' driveway and would inevitably discourage homebuyers with children from purchasing appellees' property. Even ODOT's appraiser admitted that a willing buyer would pay less for appellees' property after the improvement was complete. As stated previously, the jury was instructed not to consider any evidence of temporary noise, dust, or inconvenience during the period of construction.

The noise from, and the volume of, the increased traffic was pertinent to the determination of damages to the residue. The evidence was clear that a reasonable buyer would take into account the nature of the highway, the nearness of the property to the highway, and the increased traffic flow in determining the market value of the residue.

Appellant's second assignment is overruled.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN and TYACK, JJ., concur.