OPINION
[¶ 1] Defendant-appellant Daniel Schmidt appeals the judgment entered in an appropriation action initiated by plaintiff-appellee city of Steubenville against him in the Jefferson County Common Pleas Court. The issue presented upon appeal is whether the road construction and relocation of a stoplight caused substantial interference with the right of access to Schmidt's property, thereby causing damage to the residue. For the reasons stated below, the decision of the trial court is affirmed.
 STATEMENT OF FACTS [¶ 2] In May of 1999, Steubenville initiated an eminent domain proceeding to appropriate property and for a temporary easement on Schmidt's property. The Schmidt property is located on Sunset Boulevard, Steubenville, Ohio. Steubenville was appropriating the land to widen the existing road, Sunset Boulevard.
[¶ 3] Sunset Boulevard is a four-lane highway running in an east-west direction. The Schmidt property is located on the south side of Sunset Boulevard, opposite the T intersection of Sunset and Broadway Boulevards. Broadway Boulevard is a residential street located on the north side of Sunset Boulevard. Schmidt operates a Burger King restaurant on his property. McDonald's is located on the west side of the Schmidt property. The entrances to both restaurants are located almost directly across from Broadway Boulevard.
[¶ 4] It appears that due to the amount of traffic on Sunset Boulevard, Steubenville wanted to widen the road. Prior to road construction, traffic lights were located at the intersection of Broadway and Sunset Boulevards. This light allowed traffic from Broadway to turn either left onto Sunset or to travel across Sunset and enter either McDonald's or Burger King's parking lots. However, after completion of construction the traffic lights were relocated approximately 250 feet west on Sunset to the intersection of Dunbar Avenue and Sunset Boulevard. Dunbar Avenue is located to the west of McDonald's. Dunbar Avenue connects to Dunbar Alley. Dunbar Alley runs parallel to Sunset Boulevard and provides rear access to both McDonald's and the Schmidt property. Steubenville repaved and widened Dunbar Alley.
[¶ 5] Believing that the road construction caused substantial damage to his property, Schmidt sought damages for the partial and permanent takings and for any damage to the residue. After discovery, Steubenville filed five motions in limine. These motions asked the trial court to exclude all testimony and evidence regarding damage to the residue caused by moving traffic control devices and widening the road. Four of the five motions were granted. The remaining motion was stipulated to by the parties.
[¶ 6] Prior to trial, the parties stipulated to the value of the temporary take and the value of the permanent take. Compensation for the temporary take was $1,250 and compensation for the permanent take was $15,750. The only issue left before the trial court was damage to the residue. Schmidt sought $220,000 in damages. The parties informed the court what their testimony and evidence would be at trial. The trial court then issued a ruling which reiterated the rulings made on the motions in limine. Schmidt filed a notice of appeal from that ruling. However, this court dismissed the appeal as it was not a final appealable order. Steubenville v. Schmidt (Feb. 1, 2001), 7th Dist. No. 00JE50.
[¶ 7] The case returned to the trial court for a trial. Both parties waived the right to a jury trial and a bench trial followed. The parties stipulated to the facts as set forth in the November 30, 2000 journal entry. Steubenville claimed no damage to the residue occurred. Schmidt submitted depositions and affidavits as evidence of damage to the residue. Steubenville objected claiming this information was previously excluded by the motions in limine. The trial court sustained the objections. Schmidt then proceeded to proffer the depositions and affidavits. Having no other evidence to offer, the trial court proceeded to enter judgment. The trial court found that there was no damage to the residue. Schmidt timely appeals from that judgment.
 ASSIGNMENTS OF ERROR NOS. ONE, TWO, SIX AND SEVEN [¶ 8] Schmidt raises seven assignments of error. The arguments under assignments of error one, two, six and seven are based on the trial court's alleged error of granting the motions in limine. As such, these assignments of error will be addressed together. These assignments contend:
 [¶ 9] "THE LOWER COURT ERRED AS A MATTER OF LAW IN HOLDING DANIEL SCHMIDT COULD NOT RECOVER DAMAGES FOR SUBSTANTIAL INTERFERENCE WITH HIS ACCESS ONTO SUNSET BOULEVARD."
 [¶ 10] "THE LOWER COURT ERRED IN GRANTING THE CITY'S MOTIONS IN LIMINE AND EXCLUDING ALL OF THE PROPERTY OWNER'S EVIDENCE WITHOUT A TRIAL."
 [¶ 11] "THE LOWER COURT ERRED AS A MATTER OF LAW IN NOT PERMITTING MR. SCHMIDT'S CLAIMS FOR DAMAGES TO THE RESIDUE TO BE HEARD IN THE PRESENT ACTION."
 [¶ 12] "THE LOWER COURT ERRED IN HOLDING CIRCUITY OF ACCESS APPLIED IN THIS CASE."
 [¶ 13] The trial court granted the motions in limine, which restricted Schmidt from introducing any evidence that the movement of the stoplight caused damage to the residue of the property. Schmidt argues that the improvements to Sunset Boulevard substantially interfered with his right of access to his property. He maintains that the ability of his customers to make a left hand turn into and out of his entrance and exits is substantially affected. Steubenville argues that movement of the signal did not change the access to the property but instead changed the flow of the traffic.
[¶ 14] A ruling on a motion in limine is a ruling to exclude or admit evidence. State v. McElroy (Sept. 22, 2000), Mahoning App. No. 99CA70. An appellate court does not directly review the rulings on motions in limine. White v. Center Mfg. Co. (1998), 126 Ohio App.3d 715,723. The reason behind this is that a trial court's initial denial of a motion in limine does not preserve any error for review. State v. Hill
(1996), 75 Ohio St.3d 195, 202-203. Thus, the evidence at issue must be presented at trial, and a proper proffer made, in order to preserve the error for appeal. State v. Grubb (1986), 28 Ohio St.3d 199, 201. It is undisputed that Schmidt preserved the ruling on the motion in limine for review. Therefore, we review the trial court's decision to exclude evidence under an abuse of discretion standard. Columbus v. Taylor
(1988), 39 Ohio St.3d 162, 164. An abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Tracy v. Merrell DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152.
[¶ 15] The Ohio Constitution states that "[p]rivate property shall never be held inviolate, but subservient to the public welfare. * * * [W]here private property shall be taken for public use, a compensation therefore shall first be made in money * * * and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." State ex rel. OTR v. City of Columbus (1996),76 Ohio St.3d 203, 206, quoting Section 19, Article I, Ohio Constitution. A taking occurs when a landowner experiences a substantial or unreasonable interference with a property. OTR, supra. That interference may involve an actual physical taking of real property or it may include the deprivation of an intangible interest in the premises. Id.
[¶ 16] Once a taking occurs, the owner is entitled to compensation for the property taken and damages for injury to the property which remains after the taking, i.e. the residue. Hurst v. Starr (1992),79 Ohio App.3d 757, 762, quoting Norwood v. Forest Converting Co.
(1984), 16 Ohio App.3d 411. Compensation is the fair market value for the land actually taken. Hurst, supra. Damages to the residue, on the other hand, are measured by the difference between the pre-appropriation and post-appropriation fair market value of the residue. Id. If there is no taking of property there is no right to compensation or damages. Id. However, if a take occurs, any damage to the residue is compensable. Id., citing Columbus v. Farm Bur. Coop. Assn. (1971), 27 Ohio App.2d 197,202. However, there are some exceptions to recovery of damages to the residue even when there has been a partial taking. Hurst, supra, citingRichley v. Jones (1974), 38 Ohio St.2d 64.
[¶ 17] One of the elemental rights growing out of the ownership of a parcel of real property is the right to access abutting public roadways. OTR, supra. "An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor." OTR, supra, quoting State ex rel. Merritt v. Linzell (1955), 163 Ohio St. 97.
[¶ 18] It is undisputed that a taking of land along the frontage of Schmidt's property did occur. Therefore, he could be entitled to compensation for damage to the residue if the taking substantially interfered with his property. However, as stated above there are exceptions to the rule that when a taking occurs the landowner is entitled to compensation for the damage to the residue. In Richley, the Supreme Court found that the construction of a median strip on land appropriated for highway purposes which restricted left hand turns into a business property was not a compensable damage to the residue because it was placed there by the proper exercise of police power and circuity of access to the property was created. Hurst, 79 Ohio App.3d at 762, citingRichley, 38 Ohio St.2d 64. The placing of the median strip could have been done, with or without a take, at the same time or at a later time under the police power of the state. Hurst, supra. Hence, although the median strip affected the market value of the property, it was irrelevant to the issue of damages to the residue. Id.
[¶ 19] Schmidt claims that OTR is closely analogous to this situation. However, OTR is distinguishable from the case at hand. InOTR, a landowner was denied access to a public road abutting the front of their property by the construction of a barrier and a substantial change in the grade of the road. A barrier was not built along the front of Schmidt's property nor was the grade of Sunset Boulevard changed. All that occurred was the movement of a traffic signal and widening of the road. Prior to construction, Schmidt had two entrances and three exits. All the entrances and exits are still intact; the rear entrance/exit is greatly improved.
[¶ 20] The improvements to Sunset Boulevard, i.e. movement of the stoplight and widening of the road, are analogous to the median strip. See Brown v. Cleveland (1981), 66 Ohio St.2d 93, 96 (regulation of traffic is a governmental function; a city may lawfully regulate pursuant to its police power the elimination of traffic congestion); Richley, supra. The placing of the median strips, in Richley, was unrelated to the taking of the land which occurred for the purpose of widening the road.Hurst, supra at 757, citing Richley, supra. The movement of the stoplight is unrelated to the taking that occurred in the case at hand. An engineer stated that a signal was warranted at the Sunset Boulevard and Dunbar Avenue intersection. (Mauger Depo. 70). However, turning left out of the west entrance may be more difficult after the relocation of the traffic signal to the intersection of Sunset Boulevard and Dunbar Avenue than it was before the signal was moved from the intersection of Sunset and Broadway Boulevards. (McGuiness Depo. 66, 67). The movement of the stoplight may affect the market value of the property, but it is irrelevant to the issue of damages to the residue, since the improvements to Dunbar Alley and Avenue resulted in a feasible alternative route creating circuity of travel to and from most of the properties located on south side of Sunset Boulevard.
[¶ 21] The Richley decision was also based on circuity of access. The Ohio Supreme Court has held that:
 [¶ 22] "Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient." Merritt, 163 Ohio St. 97.
 [¶ 23] Circuity of travel to and from real property is not compensable. Id. However, circuity of travel created within the property owner's property is compensable. OTR, supra. When circuity of travel is created within one's own property, the burden is placed solely on that property and not on the general public. Castrataro v. Lyndhurst (Aug. 27, 1992), 8th Dist. No. 60901. As such, a taking occurs.
[¶ 24] Circuity of travel within one's own property occurs when one entrance/exit way is removed and another is not created. For example, when a property owner has two entrance/exit ways abutting a road and the government blocks one of the entrance/exit ways but does not add any additional entrance/exit ways. See Castrataro, supra. This would create circuity of travel within the property owner's property.
[¶ 25] Schmidt contends that the improvements to Sunset Boulevard interferes with his customers' ability to exit this driveway turning left. Assuming that the movement of the stop light eliminates use of the western driveway out of Schmidt's property, the improvements to Dunbar Alley and Avenue created a feasible alternate route of access to and from this parking lot. The alternative route abuts Sunset Boulevard in the same fashion as the driveway now claimed to be useless. State ex rel.Nago v. Masheter (1975), 42 Ohio St.2d 471. The Supreme Court in Nago
held that when the created access road abutted the road in the same fashion as the access driveway had, it was not a taking. Id. at 473.
[¶ 26] Furthermore, there is no right to compensation if the damages are those generally shared by many property owners. See Hurst,79 Ohio App.3d at 764. Assuming Schmidt's allegation is true that the movement of the light hinders his ability to use the western driveway, then McDonald's driveway, which is located adjacent to Schmidt's western driveway, is also rendered useless. The placement of the traffic light does not solely burden Schmidt's property. As such, the burden is shared in common with the general public. Nago, supra. It is a matter of public policy that compensation stop at some reasonable place to limit the cost to the public. Hurst, 79 Ohio App.3d at 764.
[¶ 27] Thus, the trial court's grant of the motion in limine was correct. In Richley, Justice (later Chief Justice) Celebrezze, speaking for the court, observed that changes in traffic flow occasioned by placing median strips are an exercise of the police power of the state and that: "Any damages that might result from the doing of a lawful act are noncompensable * * *. If we allow this damage to be introduced in evidence because there is a concurrent taking of land we are, in effect, allowing compensation for it. * * *" Richley, 38 Ohio St.2d at 66. As such, the introduction of any evidence that the movement of the traffic signal caused damage to Schmidt's property was properly excluded. Dunbar Alley and Avenue created circuity of access to and from the property.
[¶ 28] Schmidt also appears to be arguing that the driveways of his property were narrower after the construction. It is undisputed that all of the work done to the driveways occurred within Steubenville's right-of-way. There was a nominal change in the width of the driveway. When questioned in the deposition, Mauger could barely tell the difference between the change in the width of the driveway within Steubenville's right of way. Furthermore, Schmidt has already been compensated for any permanent and temporary take that occurred in Steubenville's right of way. The change in the width of the driveway within Steubenville's right of way, which was barely noticeable has no legal basis for compensation.
[¶ 29] As such, these assignments of error are without merit. The motions in limine were properly granted.
 ASSIGNMENT OF ERROR NO. THREE [¶ 30] "THE LOWER COURT ERRED IN DIRECTING A VERDICT AGAINST MR. SCHMIDT PRIOR TO THE COMMENCEMENT OF TRIAL."
 [¶ 31] Schmidt argues that the trial court erred in directing a verdict in favor of Steubenville. No motion for direct verdict was pending before the trial court. However, a trial court has the authority to sua sponte direct a verdict. Graham v. Cedar Point, Inc. (1997),124 Ohio App.3d 730. In granting a directed verdict, the trial court must construe the evidence most strongly in favor of the nonmoving party and find that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party. Civ.R. 50(A)(4).
[¶ 32] The trial court's order regarding the motion in limine was correct. The direct verdict was also correct. The motions in limine precluded Schmidt from mentioning the movement of the traffic signal or the changing of the width of the driveway within Steubenville's right of way. Schmidt admitted that he had no other evidence to offer. (Tr. 12). The exclusion of the testimony and absence of any other evidence, could only lead reasonable minds to one conclusion, that there is no damage to the residue. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NO. FOUR [¶ 33] "THE LOWER COURT ERRED IN FAILING TO LET THIS MATTER PROCEED TO TRIAL ON DANIEL SCHMIDT'S CLAIM FOR DAMAGE TO THE RESIDUE/SUBSTANTIAL INTERFERENCE WITH HIS INGRESS/EGRESS ONTO SUNSET BOULEVARD AS SAID DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 [¶ 34] Schmidt argues that the judgment is against the manifest weight of the evidence. Weight to be given the evidence and the credibility of witnesses are primarily matters for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When addressing a trial court's decision on manifest weight of the evidence issues, this court is guided by the presumption that the findings of the trial court were correct. The rationale for this presumption is that the trial court is in the best position to view witnesses and observe their demeanor, voice inflection, and gestures.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed on appeal as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279.
[¶ 35] In the case at hand, the trial court excluded all evidence that Schmidt wished to present. (Tr. 12; 4/17/01 J.E.). As explained above, that ruling was not an error. As such, given the stipulated facts and no further testimony, the trial court's judgment is not against the manifest weight of the evidence.
 ASSIGNMENT OF ERROR NO. FIVE [¶ 36] "THE LOWER COURT ERRED IN FAILING TO APPLY THE FACTS AS SET FORTH IN THE MR. SCHMIDT'S STIPULATED PROFFER OF EVIDENCE."
 [¶ 37] Under this assignment of error Schmidt argues that the trial court erred in not considering his stipulated proffer of evidence. He is correct that he proffered evidence. He is also correct that the parties stipulated to the facts as they were set forth in the November 30, 2000 judgment entry. However, his proffer of evidence was not stipulated to. As explained above the motions in limine were properly granted. Therefore, the trial court properly did not consider his proffer of evidence in making its determination. As such, this assignment of error is without merit.
[¶ 38] For the foregoing reasons, the decision of the trial court is hereby affirmed.
Judgment affirmed.
Donofrio and DeGenaro, JJ., concur.