DECISION AND JUDGMENT ENTRY
{¶ 1} Gordon Proctor, Director of the Ohio Department of Transportation (ODOT), appeals a jury verdict awarding appellees $121,400 as compensation and damages in a land appropriation action. ODOT contends the trial court erred in allowing the jury to determine if a taking of Huck Thieken's access occurred as a result of a reduction in access arising from the installation of curbs and gutters in a preexisting right of way. Specifically, ODOT argues that the trial court lacked subject matter jurisdiction to determine if a taking of access occurred. We agree. In the present case, the trial court's jurisdiction was limited to determining the amount of compensation and damages for the "take" specified in the complaint for appropriation. Because the damages Thieken complains about relate solely to a taking that is not included in the complaint, the court lacked jurisdiction over this issue.
 {¶ 2} State Route 7 is the main east-west highway in Proctorville, Ohio. Huck Thieken is the owner of property located at the northwest corner of State Route 7 and State Route 775. The southern boundary of Thieken's property abuts Route 7 for a distance of about 135 feet. A concrete planter is located midway along the boundary, leaving 116 feet of usable access. The eastern boundary of Thieken's property abuts Route 775 for a distance of about 130 feet. Access along this boundary is unimpeded.
 {¶ 3} Thieken leases his property to the John W. Clark Oil Company, which operates a gas station and convenience store on the land. Clark Oil's convenience store faces Route 7 and has three fuel islands aligned parallel to Route 7.
 {¶ 4} As part of a highway improvement project, ODOT is installing curbs and gutters along Route 7 in Proctorville. ODOT plans to "round off" the corner between Route 7 and Route 775. In addition, ODOT plans to construct six-inch concrete curbs in the right of way along Route 7. While the curbs will not be located on Thieken's property, they will affect access to his property. The concrete curbs will limit access from Route 7 to a thirty-foot drive, as opposed to the current 116 feet of unimpeded access.
 {¶ 5} In May 2002, ODOT filed a complaint to appropriate .002 acres at the southeast corner of Thieken's property and a .023-acre temporary easement in Thieken's property along Route 7.[1] Thieken responded by filing an answer and counterclaim. In July 2002, ODOT filed a motion to dismiss Thieken's counterclaim, arguing that R.C. Chapter 163 does not provide for the filing of counterclaims. Thieken voluntarily dismissed his counterclaim six months later.
 {¶ 6} Subsequently, Thieken filed a motion for partial summary judgment. In his motion, Thieken argued that the curbing along Route 7 substantially and unreasonably interferes with his right of access. He asked the court to rule that ODOT's limitation of his access is a compensable taking. In response, ODOT argued that the court lacked subject matter jurisdiction to determine if there has been an additional taking beyond that described in the complaint. Thieken subsequently filed a memorandum in reply. In the memorandum, Thieken argued that his motion merely sought a ruling that the limitation of access was a factor the jury could consider when determining damage to the residue.
 {¶ 7} The trial court ultimately ruled that the denial of access was an issue the jury could consider when assessing the compensation due Thieken. When the case proceeded to trial, the testimony focused, for the most part, on "the damage to the residue" caused by the reduction of access along State Route 7. The parties' experts both agreed that the highest and best use of the property before the curbing project was as a gas station and convenience store. The experts disagreed, however, on the highest and best use of the property after the project. ODOT's expert testified that the property could function as a gas station even after the curbing project. He testified that there was no damage to the residue of the property. Thieken's expert, on the other hand, testified that the property would not be able to function as a gas station and convenience store after the project. He testified that the curbing would damage the value of the residue. Thieken's expert valued the damage to the residue at $178,390.
 {¶ 8} At the close of the evidence, the trial court granted a directed verdict to ODOT concerning the compensation for the .002 acres ($1,307) and the .023-acre temporary easement ($3,093). Therefore, the only matter submitted to the jury for determination was the issue of damages to the residue of the property. Before sending the jury back to deliberate, the court instructed the jury on the law it was to apply. The court included the following instruction: "Damages are the loss in value to the residue of the property because of its severance from the property. In this particular case, Mr. Thieken and [Clark Oil] contend that construction of the concrete curbing around the residue substantially and unreasonably interferes with their right of access to the public streets and highways on which the land abuts. [ODOT] denies that the concrete curbing is a substantial and unreasonable interference with their right of access. I instruct you that an owner of a parcel of real property has a right to access public streets or highways on which the land abuts. Therefore, any governmental action that substantially or unreasonably interferes with this right constitutes a taking of private property within the meaning of Section 19, Article I
of the Ohio Constitution and the Fifth Amendment to the United States Constitution. If you determine that the concrete curbing is a substantial or unreasonable interference with the right of access of Mr. Thieken and [Clark Oil], you will determine what the damages to the residue are. In order to establish a taking, an owner or tenant must demonstrate a substantial or unreasonable interference with a right of access. If you conclude that, after construction, the owner or tenant will have reasonable and substantial access to State Route 7, you will not compensate the owner or tenant for the damages to the residue." After the jury returned a verdict awarding $117,000 for damages to the residue of the property, ODOT appealed. On appeal, ODOT raises the following assignment of error: "The trial court erred to the prejudice of the Plaintiff-Appellant when it permitted expert testimony to the jury that there was a compensable taking of Defendant-Appellee Thieken's access to abutting State Route 7 without a determination that such access reduction was substantial or unreasonable."
 {¶ 9} In its sole assignment of error, ODOT argues that the trial court erred in allowing the jury to determine if a taking of Thieken's access occurred. ODOT argues that the question of whether a taking of access occurred is a legal question to be determined by the court. Before we can consider the merits of ODOT's argument, we must address a more fundamental question, namely, whether the trial court had jurisdiction to determine if a taking of access occurred. An owner of real property has a right to access public streets or highways upon which the land abuts. State ex rel. OTR v. Columbus, 76 Ohio St.3d 203,1996-Ohio-411, 667 N.E.2d 8, syllabus. Any governmental action that substantially or unreasonably interferes with this right of access is a taking of private property. Id.
 {¶ 10} Although ODOT challenged the trial court's subject matter jurisdiction in the trial court, it did not pursue the argument on appeal. Nevertheless, subject matter jurisdiction cannot be waived and may be raised by this court sua sponte. SeeState ex rel. White v. Cuyahoga Metro. Hous. Auth.,79 Ohio St.3d 543, 544, 1997-Ohio-366, 684 N.E.2d 72; State ex rel. Bondv. Velotta Co., 91 Ohio St.3d 418, 419, 2001-Ohio-91,746 N.E.2d 1071. During our preliminary review of this case, we became concerned about the trial court's jurisdiction to determine if there had been an additional taking beyond that described in the complaint for appropriation. Therefore, we asked the parties to address the issue at oral argument. Subsequently, we permitted the parties to submit supplemental briefs addressing the issue. With those briefs now before us, we proceed to consider the issue of the trial court's subject matter jurisdiction.
 {¶ 11} In its supplemental brief, ODOT argues that the trial court lacked subject matter jurisdiction to determine if the curbing along State Route 7 constituted a taking of Thieken's access. Specifically, ODOT argues that the trial court's jurisdiction in an appropriation action is limited to the "take" specified in the complaint for appropriation. Correspondingly, ODOT argues that the jury's assessment in an appropriation action is limited to compensation and damages for the "take" described in the complaint.
Thieken, on the other hand, argues that he has a right to be compensated for the damage to the residue if ODOT's appropriation of his property hinders his access to the residue. He asserts that the real issue at trial and on appeal is "whether the denial of access was `substantial and material'."
 {¶ 12} Section 19, Article I of the Ohio Constitution provides: "Private property shall ever be held inviolate, but subservient to the public welfare. When taken * * * for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money * * *." Similarly, the Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." See, also, Agins v. Tiburon (1980), 447 U.S. 255, 260,100 S.Ct. 2138, 65 L.Ed.2d 106; Hawaii Hous. Auth. v. Midkiff (1984),467 U.S. 229, 231, 104 S.Ct. 2321, 81 L.Ed.2d 186.
 {¶ 13} R.C. 163.01 to 163.22 govern the procedure by which ODOT may appropriate private property. See R.C. 5519.01. ODOT may commence appropriation proceedings only if it is unable to agree with the owner to a purchase of the property. See R.C. 163.04. See, also, Highland Cty. Bd. of Commrs. v. Fasbender (July 28, 1999), Highland App. No. 98CA24.
 {¶ 14} ODOT commences appropriation proceedings by filing a complaint for appropriation.[2] R.C. 163.05. The complaint must contain seven essential allegations, including "[a] description of each parcel of land or interest or right therein sought to be appropriated * * *." R.C. 163.05. Upon service of the complaint, any owner may file an answer. R.C. 163.08. If an owner files an answer, the court must then fix a time for the assessment of compensation by a jury. R.C. 163.09(C). It is the jury's duty to assess the amount of compensation for the property appropriated and damages, if any, to the residue. See R.C.163.14. See, also, Section 19, Article I, Ohio Constitution (Stating that the compensation "shall be assessed by a jury * * *.")
 {¶ 15} In Thormyer v. Irvin (1960), 170 Ohio St. 276,164 N.E.2d 420, the Supreme Court of Ohio addressed the trial court's jurisdiction in an appropriation action brought by the Director of Highways. Specifically, the Court considered whether the necessity and extent of the taking could be determined in an appropriation action brought by the Director of Highways. SeeId. at 288. Concluding that those issues could not be determined in such an action, the Supreme Court of Ohio held: "In an appropriation proceeding by the Director of Highways of the state of Ohio for the purpose of taking property for highway purposes * * * the jurisdiction of the Court of Common Pleas islimited to a determination of the amount of compensation anddamages to which the landowner is entitled." Thormyer,170 Ohio St. 276, paragraph one of the syllabus. (Emphasis added.)
 {¶ 16} Three years later, the Supreme Court of Ohio decided the case of Preston v. Weiler (1963), 175 Ohio St. 107,191 N.E.2d 832. In Preston, the Court reaffirmed its holding inThormyer. See Preston, 175 Ohio St. 107, paragraph one of the syllabus. Additionally, the Court set forth the procedural devices available to property owners seeking to challenge anything other than compensation and damages: "The court has determined that, in instances where a property owner is of the opinion that there is no necessity for an appropriation, injunction is the proper remedy; that, in instances where theproperty owner is of the opinion that there is a `taking' of hisproperty and the proper authority has refused payment of justcompensation and has refused to institute appropriationproceedings, mandamus is a proper remedy; and that, where the Director of Transportation has, by resolution, designated a `taking' and brought an action for appropriation in the Common Pleas Court and made a deposit, the jurisdiction of the Common Pleas Court is limited to a determination of the amount of compensation and damages to which the landowner is entitled."Id. at 111-12 (Emphasis added.)
 {¶ 17} Although the Supreme Court of Ohio decided Thormyer
and Preston before the enactment of R.C. Chapter 163,[3]
the General Assembly incorporated the Thormyer holding into R.C. 163.08. Thus, R.C. 163.08 provides: "Any owner may file an answer to such petition. Such answer shall be verified as in a civil action and shall contain a general denial or specific denial of each material allegation not admitted. The agency's right to make the appropriation, the inability of the parties to agree, and the necessity for the appropriation shall be resolved by the court in favor of the agency unless such matters are specifically denied in the answer and the facts relied upon in support of such denial are set forth therein, provided, whentaken * * * for the purpose of making or repairing roads, whichshall be open to the public, without charge, an answer may notdeny the right to make the appropriation, the inability of theparties to agree, or the necessity for the appropriation. * * *" (Emphasis added.) Moreover, Ohio courts continue to hold that mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where the owner contends that an involuntary taking of private property is involved. SeeState ex rel. Preschool Dev., Ltd. v. Springboro,99 Ohio St.3d 347, 349, 2003-Ohio-3999, 792 N.E.2d 721; State ex rel. Elsassv. Shelby Cty. Bd. of Commrs., 92 Ohio St.3d 529, 533,2001-Ohio-1276, 751 N.E.2d 1032; State ex rel. BSW Dev. Group v.Dayton, 83 Ohio St.3d 338, 341, 1998-Ohio-287, 699 N.E.2d 1271;State ex rel. Levin v. Sheffield Lake (1994),70 Ohio St.3d 104, 108, 637 N.E.2d 319. See, also, Cincinnati EntertainmentAssn., Ltd. v. Hamilton Cty. Bd. of Commrs. (2001), 141 Ohio Ap.3d 803, 810, 753 N.E.2d 884; Hatfield v. Wray (2000),140 Ohio App.3d 623, 627, 748 N.E.2d 612; Weir v. Kebe (1985),29 Ohio App.3d 53, 57, 503 N.E.2d 177.
 {¶ 18} In Wray v. Goeglein (Dec. 2, 1998), Meigs App. No. 97CA9, we addressed an issue similar to the one presented here. In Goeglein, ODOT filed a complaint to appropriate property owned by the Pickens and the Goegleins. ODOT's complaint described the property being appropriated as "all right, title and interest in fee simple, including limitation of access, in the * * * property, excepting and reserving coal, minerals, and mining rights." Id. The property owners responded with an answer and counterclaim. The Pickens' counterclaim alleged that ODOT's appropriation of their surface estate amounted to a taking of their sub-surface estate since it would prevent mining of the coal. They sought judgment against ODOT for "the loss of the value of the surface of the real estate as well as the coal rights underlying the real estate * * *." Id. The Goegleins' counterclaim alleged that ODOT's appropriation would substantially interfere with "other ownership rights". Id. They sought compensation for the damage to those ownership rights. ODOT subsequently filed a motion to dismiss the counterclaims on the basis that the court lacked subject matter jurisdiction over them. The property owners opposed the motion, arguing that, at the least, their counterclaims should be construed as seeking damages for the residue of their surface estates. After a hearing on the motion, the trial court granted ODOT's motion to dismiss the counterclaims. The court concluded that it lacked jurisdiction to hear any compensation or damage issues relating to the property owners' sub-surface estates. Id. The property owners challenged this ruling on appeal.
 {¶ 19} In Goeglein, we concluded that the trial court acted properly when it dismissed the counterclaims for lack of subject matter jurisdiction. We began our analysis by reviewing the law of eminent domain. In doing so, we specifically noted the Supreme Court of Ohio's holdings in Thormyer and Preston. We then proceeded to consider the issue of compensation and damages. We noted that "[w]hen the director of transportation appropriates private property, the property owner is entitled to `just compensation'; that is, `compensation for the property actually taken and damages for injury to the property which remains after the taking.'" Goeglein, quoting Hurst v. Starr (1992),79 Ohio App.3d 757, 762-63, 607 N.E.2d 1155. Finally, we reviewed the law relating to the appropriation of surface estates. In the end, we affirmed the trial court's judgment, stating: "In light of the foregoing principles, we conclude that the trial court did not err by dismissing appellants' counterclaims. Appellants' counterclaims asserted that they were entitled to be compensated for their mineral estates. It is clear, however, that ODOT effected a severance of the surface estate and the mineral estate. * * * Because ODOT did not `take' appellants' mineral estate, appellants are not, in this proceeding, entitled to `compensation' for the mineral estate. Nor are appellants entitled to `damages' to the mineral estates. `Damages' are awarded to compensate the landowner for injury to the portion of the estate not taken, i.e., the residue. In the case at bar, the residue consists of the portion of the surface estate that ODOT did not take. * * * As appellants' counterclaims did not address the issue of compensation for the estate taken or damages to the residual estates, the trial court properly dismissed the counterclaims. We hasten to add, however, that appellants are not left without a remedy to obtain compensation for their affected mineral estates. Appellants may seek compensation for their estates in a separate proceeding. We agree with the trial court and ODOT that if appellants believe that the taking of their surface estates will prevent them from enjoying their mineral estates, appellants should seek a writ of mandamus in a court of competent jurisdiction compelling ODOT to appropriate their mineral estates. * * *." Goeglein (Footnote and Citations omitted.)
 {¶ 20} Although the facts in Goeglein and the present case are quite different, the underlying issue is the same. In bothGoeglein and the present case, the property owners sought compensation and damages for an alleged taking beyond that described in the complaint for appropriation. In Goeglein, the property owners sought compensation and damages for an alleged taking of their mineral estates. In the present case, Thieken sought compensation and damages for an alleged taking of his easement of access. However, as our decision in Goeglein
indicates, an appropriation action is not the proper forum in which to raise claims of additional takings. Rather, a property owner who believes there has been a taking of property beyond that described in the complaint must seek a writ of mandamus compelling ODOT to institute appropriation proceedings. SeeGoeglein.
 {¶ 21} ODOT's complaint only sought to appropriate .002 acres at the southeast corner of Thieken's property and a.023-acre temporary easement in the property along State Route 7. It did not seek to appropriate Thieken's easement of access. Moreover, the two specified appropriations do not have a direct impact on Thieken's access. Any adverse impact on Thieken's access resulted from work ODOT performed in its preexisting right of way, i.e., placing curbs in the right of way ODOT already owned. The trial court, however, permitted the jury to determine if there had been a taking of Thieken's access. A review of the jury instruction set forth above indicates that the court essentially instructed the jury to determine if the curbing along State Route 7 resulted in a taking of Thieken's access and to compensate Thieken accordingly.
 {¶ 22} We conclude the trial court acted outside its jurisdiction when it permitted the jury to determine if a taking of Thieken's access occurred. The court did not have jurisdiction to determine if there had been a taking beyond that described in the complaint for appropriation. See Goeglein. Rather, the trial court's jurisdiction in the present case was limited to a determination of the compensation and damages for the appropriation described in the complaint. See Thormyer,170 Ohio St. 276, paragraph one of the syllabus; Preston,175 Ohio St. 107, paragraph one of the syllabus.
 {¶ 23} Thieken, however, argues that the limitation of his access was a factor to be considered when determining the damage to the residue of his property. He states: "[I]f ODOT appropriates a portion of Appellee's real property and (substantially and materially) hinders his access to the residue, Appellee has a right to be compensated for such damage without the necessity of additional litigation."
 {¶ 24} In a partial takings case, the owner is entitled to receive compensation not only for the property taken but also for any damage to the residue as a result of the take. See Norwoodv. Forest Converting Co. (1984), 16 Ohio App.3d 411, 415,476 N.E.2d 695; Englewood v. Wagoner (1987), 41 Ohio App.3d 324,326, 535 N.E.2d 736. See, also, Knepper Frye, Ohio Eminent Domain Practice (1977) 268, Section 9.04. Damage to the residue is measured by the difference between the fair market values of the remaining property before, and after, the taking.Englewood. See, also Hurst v. Starr (1992),79 Ohio App.3d 757,763,607 N.E.2d 1155. When determining the fair market value of the remaining property before and after the taking, those factors that would enter into a prudent businessperson's determination of value are relevant. Englewood, citingNorwood, 16 Ohio App.3d at 415. "Among the elements that may be important are * * * loss of ingress and egress * * * diminution in the productive capacity or income of the remainder area or the permanent loss of rental value thereof, and any other losses reasonably attributable to the taking." Knepper Frye at 271, Section 9.06.
 {¶ 25} The law makes clear that property owners in a partial takings case can recover compensation for any damage to the residue resulting from the appropriation. See Englewood,41 Ohio App.3d at 326 (Stating that property owner can recover "* * * compensation for any damage to the landowner's remaining property (the residue) as a result of the take."); Noble v.Flowers (1959), 108 Ohio App. 1, 3, 160 N.E.2d 383 (Stating that the owner is entitled to be compensated "* * * for the damage to the residue occasioned by the taking.") See, also, Knepper Frye at 268, Section 9.04 (Stating that just compensation to the owner involves "* * * damage to the residue resulting from the taking."); 4A Nichols, Eminent Domain (3 Ed. 2004) 14-31, Section 14.02[1][a] (Stating that the property owner may recover "* * * severance damages to the diminution in value of the remainder directly caused by the taking itself * * *.") Therefore, if a partial taking affects the property owner's access to the remainder of the property, that factor can be considered in determining damage to the residue. See Knepper Frye at 271, Section 9.07. However, that is not the case here. Thieken offered no evidence establishing that the taking of the southeastern corner of his property or the taking of a temporary easement in his property affected his access to the remainder of the property. Rather, the trial evidence indicates that it is the curbing in the preexisting right of way along Route 7 that affects access to Thieken's property. As already noted, Thieken's easement of access was not part of the "take" described in the complaint. Therefore, Thieken cannot, in this action, recover for damage to the residue caused by this loss of access.
 {¶ 26} Furthermore, the record indicates that the trial court treated Thieken's loss of access as more than just a factor to be considered in determining damage to the residue of the property. Basically, the trial court treated the loss of access as a potential taking. A review of the trial court's jury instructions indicates that the trial court informed the jury that any governmental action that substantially or unreasonably interferes with a property owner's right of access constitutes a taking of private property. The court then instructed the jury: "If youdetermine that the concrete curbing is a substantial orunreasonable interference with the right of access * * * you will determine what the damages to the residue are." (Emphasis added.) As this italicized language demonstrates, the trial court essentially instructed the jury to determine if a taking of Thieken's access occurred.
 {¶ 27} In his supplemental brief, Thieken states: "The real issue at trial and on appeal was whether the denial of access was `substantial and material'." However, such a consideration is only relevant when determining if a taking occurred. An appropriation action is not the proper proceeding in which to determine if a taking occurred. See, generally, Goeglein. In an appropriation action, the trial court's jurisdiction is limited to determining the compensation for the property appropriated and damage to the residue resulting from the appropriation. SeeThormyer, 170 Ohio St. 276, paragraph one of the syllabus;Preston, 175 Ohio St. 107, paragraph one of the syllabus.
 {¶ 28} We conclude the trial court did not have jurisdiction to determine if a taking of Thieken's access occurred. If Thieken believes that ODOT appropriated his easement of access without instituting appropriation proceedings, he can file a mandamus action. See State ex rel. Preschool Dev., Ltd.,99 Ohio St.3d at 349; State ex rel. Elsass, 92 Ohio St.3d at 533; State exrel. BSW Dev. Group, 83 Ohio St.3d at 341. It appears that Thieken can still pursue a mandamus action since the applicable statute of limitations in such cases is six-years.[4] SeeState ex rel. R.T.G., Inc. v. State, 98 Ohio St.3d 1, 7,2002-Ohio-6716, 780 N.E.2d 998. We recognize that the result in this case may not be the best use of judicial time and resources. It is, however, the result required by law. Accordingly, we are powerless to ignore it.
 {¶ 29} Having concluded that the trial court lacked subject matter jurisdiction to determine if an additional taking occurred, we must now determine the proper remedy. Our review of the trial transcript indicates that Thieken offered no evidence establishing that the take specified in the complaint resulted in damage to the residue of his property. Instead, the evidence at trial focused on the damage to the residue resulting from the reduction of access along Route 7. Moreover, the trial court's jury instructions linked the damage determination with this alleged taking of access. Specifically, the court instructed the jury: "If you determine that the concrete curbing is a substantial or unreasonable interference with the right of access of Mr. Thieken and [Clark Oil] you will determine what the damages to the residue are. * * * If you conclude that, after construction, the owner or tenant will have reasonable and substantial access to State Route 7, you will not compensate the owner or tenant for the damages to the residue." Given the evidence at trial and the court's jury instructions, we are forced to conclude that the jury's damage award pertains solely to the damage resulting from the alleged taking of access. Because the court did not have jurisdiction to determine if a taking of access occurred, we are forced to further conclude that the jury's damage award is void. We note that this ruling in no way affects the compensation awarded for the .002 acres and the .023-acre temporary easement.
 {¶ 30} Accordingly, we remand this matter to the trial court with instructions to vacate the jury's award. The court's directed verdict concerning the .002 acres and the.023 acre temporary easement remains in effect.
Judgment affirmed in part, reversed in part, and cause remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that Appellant and Appellees split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] ODOT's complaint named Thieken, Clark Oil, Quaker State Corporation, the county treasurer, and the county auditor as defendants. ODOT subsequently dismissed Quaker State from the action based on Quaker State's stipulation that it had no interest in the property. Although Clark Oil participated in the case at the trial level, it is not a party to this appeal.
[2] R.C. 163.04 refers to a "petition" for appropriation. However, Civ.R. 7(A) replaces the word "petition" with "complaint". See Knepper Frye, Ohio Eminent Domain Practice (1977) 301, fn.20, Section 10.07.
[3] The General Assembly enacted R.C. 163.01 to 163.22 in 1965. The statutes took effect in January 1966.
[4] If the alleged taking is an accomplished fact, Thieken must bring his mandamus action in Franklin County. See R.C. 5504.22;Certain v. Hurst July 3, 1991), Pickaway App. No. 90CA5. If, however, the alleged taking is not yet complete, Thieken can bring his mandamus action in the county where the property is located. R.C. 5504.22; Certain.