**[Cite as *Marchbanks v. Inland Prods., Inc.*, 2021-Ohio-2655.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [Jack Marchbanks], Director of the Ohio Department of Transportation, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-670 |
| v. | | (C.P.C. No. 18CV-5421) |
| | : | |
| Inland Products, Inc., | | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on August 3, 2021

**On brief:** *Dave Yost*, Attorney General, *L. Martin Cordero*, and *William J. Cole*, for appellant. **Argued:** *L. Martin Cordero*.

**On brief:** *Goldman Braunstein Stahler Kenter LLP*, *Clinton P. Stahler*, and *Aaron E. Kenter*, for appellee. **Argued:** *Clinton P. Stahler*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiff-appellant, the Director of the Ohio Department of Transportation ("ODOT"), appeals a judgment of the Franklin County Court of Common Pleas that ordered ODOT to pay defendant-appellee, Inland Products, Inc., $553,455.60 for damages caused to the residue of Inland Products' real property as a result of ODOT's appropriation of Inland Products' property. For the following reasons, we affirm.

{¶ 2} Inland Products owns a roughly rectangular-shaped, 17.902-acre lot in south Columbus near the Frank Road interchange with Interstate 71 ("I-71"). Although used for decades as the site of a rendering plant, the property is currently vacant. Frank Road borders the property on the north, and Jackson Pike borders the property on the west.[1] There is a signaled intersection at the northwest corner of the property where Frank Road and Jackson Pike meet. I-71, which runs parallel to Jackson Pike, is immediately west of Jackson Pike.

{¶ 3} The northbound I-71 exit onto Frank Road merges into the stretch of Jackson Pike that borders Inland Products' property. That means that vehicles exiting northbound I-71 must merge with northbound traffic on Jackson Pike, and southbound vehicles on Jackson Pike must cross over traffic exiting I-71. To alleviate this dangerous situation, ODOT decided to redesign the I-71 interchange by "unbraiding" the northbound exit and Jackson Pike. ODOT approved plans to relocate Jackson Pike, swinging the road eastward in a diagonal, curving path through the middle of Inland Products' property beginning in the southwest corner of the property and ending in the northeast corner.

{¶ 4} To proceed with its plans, ODOT sought to appropriate 3.793 acres of Inland Products' property.[2] ODOT separated the real property it intended to take into three parcels: (1) Parcel 2-WL, a permanent fee simple take of 1.479 acres with limitation of access to the abutting roads, i.e., Jackson Pike and Frank Road; (2) Parcel 2-WD 1, a permanent fee simple take of 0.866 acres without limitation of access to the abutting road, i.e., Jackson Pike; and (3) Parcel 2-WD 2, a permanent fee simple take of 1.448 acres without limitation of access to the abutting road, i.e., Jackson Pike.

{¶ 5} Because the take carves a diagonal path through the middle of Inland Products' property, it results in two triangular-shaped residue lots. The left residue is 4.959 acres, and the right residue is 9.150 acres.

{¶ 6} The parties could not agree on the amount of compensation ODOT will pay for the appropriated property or the value of damages to the remaining property. Consequently, on June 26, 2018, ODOT filed a petition in the trial court to appropriate the

---

[1] Generally, Frank Road is an east/west road; Jackson Pike travels north/south.

[2] ODOT also sought two temporary easements, which are not at issue in this appeal. We, therefore, do not discuss them in this decision.

property, establish just compensation for the appropriated property, and determine the amount of damages to the residue.

{¶ 7}    Prior to a jury trial, ODOT filed a motion in limine seeking to exclude certain evidence Inland Products intended to introduce regarding the access it will have to the left and right residues after the taking. Before the taking, vehicles could enter and exit Inland Products' property through two driveways. One driveway allowed traffic to access the property from Frank Road, and a second driveway, shared with an adjacent property owner, allowed traffic to enter the property from Jackson Pike.[3] ODOT's construction plans for relocating Jackson Pike show that ODOT intends to modify access to Inland Products' property. The project plans eliminate the Frank Road driveway to the property. Although ODOT will retain the shared driveway from Jackson Pike, the driveway will only serve the right residue, and it will intersect with Jackson Pike at a different angle. To ensure that the left and right residues maintain access to an abutting road, the project plans provide both residues with driveway stubs to the newly constructed portion of Jackson Pike. ODOT intends to construct a 20-foot-wide driveway stub at the southeast corner of the left residue, and, directly across the road, a 26-foot-wide driveway stub to the right residue.

{¶ 8}    ODOT's motion in limine asked the trial court to exclude any evidence that (1) the residue driveways will be unsafe and unsuitable for commercial or industrial uses, and (2) no one can guarantee that ODOT will approve modification of the residue driveways or installation of additional driveways in the future. ODOT asserted that it did not seek to take Inland Products' right of access to the abutting road, i.e., Jackson Pike, with regard to Parcels 2-WD 1 and 2-WD 2, as that right was not included in the description of rights ODOT intended to take in the petition for appropriation. However, ODOT believed that Inland Products would argue to the jury that ODOT intended to limit Inland Products' right of access to only the width of the residue driveways. Thus, according to ODOT, Inland Products would seek to prove a greater taking would occur than that described in the petition for appropriation. Because the jury lacked authority to determine if such a taking would occur, ODOT argued that the trial court should exclude Inland Products' evidence.

---

[3] The shared driveway is on the property of the adjacent property owner. Apparently, Inland Products has an easement permitting it to use the driveway to access its property.

{¶ 9}   Inland Products responded that it was not trying to prove an additional taking.  Inland Products pointed out that it was entitled to damages to the residues based on the effect of the appropriation on access to the residues, and to present evidence establishing these damages.  According to Inland Products, before the taking, semi-tractor-trailer trucks could safely access the property through both driveways.  After the taking, semi-tractor-trailer trucks will not be able to access the residues through the driveways without driving off the pavement and/or blocking lanes of traffic.  Inland Products posited that the lack of safe access suitable for semi-tractor-trailer trucks negatively impacted the residues' value, resulting in damages.  Although Inland Products recognized that it could seek ODOT's approval to install better driveways in the future—because it retained its right of access—such approval was not guaranteed.

{¶ 10}  The trial court denied ODOT's motion in limine.  Immediately prior to the beginning of the jury trial, the trial court stated, "The main issue for the jury to consider is the right of access defendant possesses as of the day of the take.  Accordingly, any evidence pertaining to the driveways * * * may come in."  (Tr. at 71.)

{¶ 11}  At trial, Inland Products' expert real estate appraiser, Richard Vannatta, testified that, before the take, the highest and best use of Inland Products' property was for a highway-oriented commercial establishment, such as a travel plaza.  To support this opinion, Inland Products relied on the testimony of Mark Antonetz, a registered civil engineer.  Antonetz designed a preliminary site plan for the construction of a travel plaza on the property and determined that the development of such a travel plaza was a feasible use for the property.  In making this determination, Antonetz took into account the existing driveways, which numerous semi-tractor-trailer trucks had entered and exited when the property was the site of a rendering plant.

{¶ 12}  In considering the value of the residues after the take, Vannatta downgraded his opinion of highest and best use to industrial use.  Vannatta's opinion regarding highest and best use of the property changed, in part, because of the modifications in access shown on the Jackson Pike project plans.

{¶ 13}  As we explained above, as shown in the project plans, the left residue will have access to Jackson Pike through a 20-foot-wide driveway, and the right reside will have access to Jackson Pike through the shared driveway and a 26-foot-wide driveway.  Antonetz

conducted a turning analysis for the 20-foot-wide driveway to the left residue. He testified that a semi-tractor-trailer truck could not safely use the driveway to enter or exit the left residue, making the driveway inadequate for commercial uses requiring semi-tractor-trailer-truck traffic. Antonetz also conducted a turning analysis for the shared driveway. He explained that the project plans increased the angle at which the shared driveway will intersect with Jackson Pike, which will make the driveway unsafe and inadequate for semi-tractor-trailer-truck traffic. Finally, Kevin Carpenter, an engineer with the infrastructure design firm that designed the project plans to relocate Jackson Pike, conducted a turning analysis for the 26-foot-wide driveway to the right residue. He testified that, when turning right into the property, a semi-tractor-trailer truck will have to divert into the center turning lane to make the turn. When turning left into the property, a semi-tractor-trailer truck will have to turn from its lane of travel rather than the turning lane. Steven Fellenger, an ODOT project manager, conceded that, given this maneuvering, the right driveway was unsuitable for semi-tractor-trailer-truck traffic. Fellenger further admitted that none of the driveways were designed for commercial use.

{¶ 14} To counter Vannatta's opinion that the residues' highest and best use was industrial use, ODOT relied on the expert testimony of Kevin Kershner, a civil engineer, who assessed the feasibility of developing the left and right residues. Kershner created multiple conceptual designs for potential uses, and he concluded that both residues could be used for commercial or light manufacturing purposes. However, Kershner's conceptual designs included driveways different from those depicted in the Jackson Pike project plans. Kershner widened and reconfigured the 20-foot-wide driveway to the left residue because the driveway in the project plans would not support his conceptual designs. With regard to the right residue, in addition to widening the 26-foot-wide driveway, Kershner added a completely new driveway.

{¶ 15} The stretch of relocated Jackson Pike that will be built on Parcels 2-WD 1 and 2-WD 2 will be designated nonlimited access. In nonlimited access areas, property owners may construct and connect driveways to the road if they apply for and receive ODOT's permission. That permission depends upon the planned use, development plan, traffic impacts, and type of vehicles that will use the driveway. Multiple ODOT witnesses, including Kershner, acknowledged that there was no guarantee that ODOT would approve

a permit to widen the residue driveways or add a new driveway to the left or right residue. Additionally, Kershner testified that, in his experience, Inland Products would face difficulty in obtaining approval for moving the driveways to different locations. Finally, Fellenger, the ODOT project manager, admitted that the owner of Inland Products had asked ODOT for additional driveways to the residues, but ODOT had refused to modify the project plans.

{¶ 16} Throughout the trial, ODOT objected to Inland Products' evidence regarding the residue driveways. At the conclusion of the trial, the jury awarded Inland Products $815,447.59 in compensation for the three parcels ODOT sought to appropriate. The jury awarded Inland Products $553,445.60 in damages to the residue, which included $403,333.76 for injury "related to the size, location and/or configuration of the driveways to the [ ] residue[s] as provided on the project plans[.]" (Interrog. Nos. 1 & 2.) On September 3, 2019, the trial court entered judgment on the verdict.

{¶ 17} ODOT now appeals the September 3, 2019 judgment, and it assigns the following error:

> THE TRIAL COURT LACKED SUBJECT[-]MATTER JURISDICTION TO PERMIT THE JURY TO HEAR EVIDENCE OF AND COMPENSATE FOR RESIDUE DRIVEWAY ACCESS CONTRARY TO THAT DESCRIBED IN THE PETITION.

{¶ 18} By its only assignment of error, ODOT argues that the trial court erred in admitting evidence that ODOT intended to appropriate Inland Products' right of access to a road abutting its property when such a taking was not described in the petition for appropriation. We disagree.

{¶ 19} Trial courts exercise broad discretion when deciding to admit or exclude evidence. *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 38; *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. Consequently, appellate courts will only reverse evidentiary rulings upon a showing of an abuse of discretion. *Banford* at ¶ 38; *Beard* at ¶ 20. A trial court abuses its discretion if it acts in an unreasonable, arbitrary, or unconscionable manner. *Banford* at ¶ 38.

{¶ 20} ODOT argues that this court should apply a de novo standard in reviewing the trial court's evidentiary ruling because the court lacked subject-matter jurisdiction to

admit evidence that defined a limitation of the right of access not found in the petition for appropriation. We disagree.

{¶ 21} "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19. Common pleas courts are constitutionally created courts, that have "original jurisdiction over all justiciable matters * * * as may be provided by law." Ohio Constitution, Article IV, Section 4(B). Generally, jurisdiction has been "provided by law" in R.C. 2305.01, which states that courts of common pleas have "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts." Traditionally, common pleas courts are courts of general jurisdiction, "with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.' " *Kuchta* at ¶ 20, quoting *Saxton v. Seiberling*, 48 Ohio St. 554, 558-59 (1891).

{¶ 22} R.C. 163.01 to 163.22 govern the procedure by which an agency, including ODOT, may appropriate private property. *See* R.C. 5519.01. Pursuant to that statutory scheme, a "court of common pleas * * * of any county in which the property sought to be appropriated is located in whole or in part" has the authority to adjudicate a petition for appropriation. R.C. 163.01(D). ODOT does not contest that the trial court possessed subject-matter jurisdiction over the instant action in accordance with R.C. 163.01 to 163.22.

{¶ 23} Once a court has jurisdiction over both the subject-matter of an action and the parties to it,[4] the right to hear and determine is perfect, and the decision of every subsequently arising question is but the exercise of jurisdiction conferred. *State v. Rue*, ___ Ohio St.3d ___, 2020-Ohio-6706, ¶ 14; *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 12. Consequently, because the trial court here possessed both subject-matter and personal jurisdiction, it unquestionably had the authority to exercise its jurisdiction in determining whether to admit the evidence at issue. The issue in this appeal is whether it committed legal error in doing so, which we review for abuse of discretion, as explained above.

{¶ 24} The Ohio Constitution prohibits the state from taking private property for public use without just compensation. Ohio Constitution, Article I, Section 19. An agency

---

[4] Neither party disputes that the trial court had personal jurisdiction over them.

seeking to acquire property must provide the owner of the property with a good faith offer to purchase the property. R.C. 163.04. If the parties cannot agree on a conveyance or the terms of a conveyance, the agency may file a petition for appropriation. R.C. 163.05. The petition must include "[a] description of each parcel of land or interest or right therein sought to be appropriated." R.C. 163.05(A). If the owner answers the petition, the court then schedules a jury trial. R.C. 163.09(C). The jury assesses the amount of compensation due the owner for the property appropriated and the damages, if any, for the residue. R.C. 163.14.

{¶ 25} Nothing in R.C. 163.01 to 163.22 permits the trial court or jury to determine the existence of a taking beyond that described in the complaint. When a property owner believes a governmental agency has taken his property but refused to institute appropriation proceedings, the property owner's recourse is a mandamus action seeking to compel the agency to proceed with the statutory process. *State ex rel. New Wen, Inc. v. Marchbanks*, 159 Ohio St.3d 15, 2020-Ohio-63, ¶ 15; *Proctor v. Thieken*, 4th Dist. No. 03CA33, 2004-Ohio-7281, ¶ 17, 20. In an appropriation proceeding, the only question before the jury is the amount of compensation and damages, if any, to award to the property owner for the taking described in the complaint. R.C. 163.14; 163.15.

{¶ 26} Here, ODOT argues that Inland Products sought to expand the parameters of the taking described in the complaint to include the appropriation of its right of access to the abutting road, i.e., Jackson Pike. One of the elemental rights of property ownership is the right of access to any public road abutting the property. *New Wen* at ¶ 17. An owner of property abutting on a public road possesses, as a matter of law, " 'not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property.' " *Id.*, quoting *State ex rel. Merritt v. Linzell*, 163 Ohio St. 97 (1955), paragraph one of the syllabus. Any governmental action that substantially or unreasonably interferes with the right of access to abutting roads constitutes a taking within the meaning of Article I, Section 19 of the Ohio Constitution. *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203 (1996), syllabus.

{¶ 27} ODOT asserts—and Inland Products does not contest—that ODOT did *not* include Inland Products' right of access to abutting roads in the description of Parcels 2-WD 1 and 2-WD 2 in the petition for appropriation. Thus, the right of access remained with

Inland Products. However, according to ODOT, Inland Products introduced evidence regarding the inadequacy of the residue driveways so it could assert to the jury that ODOT planned to take its right of access to Jackson Pike. ODOT maintains that Inland Products informed the jury that ODOT intended to limit its right of access to Jackson Pike to the 20-foot-wide left residue driveway and the 26-foot-wide right residue driveway. Inland Products then improperly sought compensation for a taking based on the restricted right of access.

{¶ 28} Inland Products disputes this argument. According to Inland Products, it never sought to prove an additional taking. Instead, it introduced evidence of how ODOT's taking of all three parcels will cause it injury by negatively affecting access to the residues. Inland Products asserts that it presented evidence that, after the taking, the residue driveways will be inadequate for highway-oriented commercial use, resulting in a decrease of the residues' value.

{¶ 29} In the case of a partial taking, the owner is entitled to a remedy consisting of two elements: compensation for the property taken and damages for the injury to the property that remains after the taking, i.e., the residue. *Hurst v. Starr*, 79 Ohio App.3d 757, 762 (10th Dist.1992). The amount of compensation due is equal to the fair market value of the property taken. *Hilliard v. First Indus., L.P.*, 165 Ohio App.3d 335, 2005-Ohio-6469, ¶ 8 (10th Dist.) ("*First Indus. II*"). Damages are due " 'for any injury that may result to the remaining lands by reason of the construction of the proposed improvement, after making all permissible allowances for special benefits, and the like, resulting thereto.' " *Id.*, quoting *Norwood v. Forest Converting Co.*, 16 Ohio App.3d 411, 415 (1st Dist.1984).

{¶ 30} The measurement of damage to the residue is the difference between the fair market value before the appropriation and the fair market value after the appropriation. *Dublin v. Pewamo Ltd.*, 194 Ohio App.3d 57, 2011-Ohio-1758, ¶ 5 (10th Dist.); *First Indus. II* at ¶ 10, *Hilliard v. First Indus., L.P.*, 158 Ohio App.3d 792, 2004-Ohio-5836, ¶ 5 (10th Dist.) ("*First Indus. I*"); *Starr* at 763. Generally, in determining both pre- and post-appropriation fair market values, a jury considers every element that can fairly enter into the question of value and that an ordinarily prudent businessperson would consider when

deciding whether to purchase the property.[5]  *Pewamo* at ¶ 6; *First Indus. II* at ¶ 10; *First Indus. I* at ¶ 5; *Starr* at 763; *accord Westerville v. Taylor*, 10th Dist. No. 13AP-806, 2014-Ohio-3470, ¶ 34 ("In assessing damages to the residue as a result of a taking, the jury is to consider those factors that would enter into a prudent businessperson's determination of value.").  Consequently, a jury may properly consider "any element of damage that makes 'the residue less valuable in its separate state after its taking than it was as a part of the whole before the taking.' "  *First Indus. I* at ¶ 5, quoting Knepper & Frye, *Ohio Eminent Domain Practice*, Section 9.06, at 270-71 (1977).

{¶ 31} The elements a jury may consider include the loss of ingress and egress, as well as other losses reasonably attributable to the taking.  *Wray v. Frank*, 4th Dist. No. 14CA2, 2015-Ohio-4248, ¶ 18; *Pewamo* at ¶ 6; *Proctor v. NJR Properties, LLC*, 175 Ohio App.3d 378, 2008-Ohio-745, ¶ 15 (12th Dist.); *First Indus. I* at ¶ 5; *Proctor v. French Hardware, Inc.*, 12th Dist. No. CA2002-06-010, 2003-Ohio-4244, ¶ 8; *accord Taylor* at ¶ 34 (holding that a "key element[ ] that a willing buyer could consider in purchasing the residue that would potentially devalue the property" was access to the residue).  If a partial taking affects the property owner's access to the remainder of the property, that factor can be considered in determining damage to the residue.  *Frank* at ¶ 18; *NJR* at ¶ 16.

{¶ 32} The outcome of this appeal turns on the nature of the evidence at issue. Inland Products introduced evidence that, as a result of the taking, ODOT plans to relocate Jackson Pike, reconfigure Frank Road, and modify how vehicles will access Inland Products' remaining property.  According to Inland Products' witnesses, the residue driveways depicted in the project plans are inadequate and unsafe for semi-tractor-trailer trucks.  Inland Products' expert real estate appraiser testified that because the residue driveways will be less functional than the driveways that previously existed on the property, the post-appropriation fair market value is less than the pre-appropriation fair market value.  Thus, here, we have evidence of a taking of real property resulting in the impairment

---

[5] As ODOT points out, there are some exceptions to this broad rule.  *See Wray v. Wessell*, 4th Dist. No. 15CA3724, 2016-Ohio-8584, ¶ 26 ("[W]hile the general rule for valuing residual property is 'the market value of what remains, or what will remain, after the improvement has been completed,' 'in some situations * * * [the market value] must be adjusted to exclude the impact of noncompensable attributes of value.' ").  ODOT, however, does not argue that any of the exceptions apply in this case.

of physical access and a resulting decrease in the value of the residues. This evidence, therefore, qualifies as admissible evidence relevant to the issue of damage to the residues.

{¶ 33} Before we go any further, we recognize that the trial court gave a different rationale for its evidentiary ruling. The trial court admitted the evidence so the jury could consider "the right of access defendant possesses as of the day of the take." (Tr. at 71.) That issue, however, is outside the jury's purview. Nevertheless, the trial court's erroneous rationale does not impact our analysis. Appellate courts review judgments, not reasons. *Mancz v. McHenry*, 2d Dist. No. 2019-CA-74, 2021-Ohio-82, ¶ 36; *State v. Atkinson*, 5th Dist. No. CT2019-0055, 2020-Ohio-3122, ¶ 15. Consequently, " 'a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof.' " *Salloum v. Falkowski*, 151 Ohio St.3d 531, 2017-Ohio-8722, ¶ 12, quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). We thus turn to addressing ODOT's arguments for excluding evidence regarding the residue driveways.

{¶ 34} First, ODOT directs this court to *Beasley v. Watkins-Alum Creek Co.*, 12th Dist. No. CA2010-09-021, 2011-Ohio-6792, and argues that that case mandates the exclusion of the evidence at issue. In *Watkins-Alum Creek*, the petition for appropriation granted the defendant property owner a 60-foot point of access on the abutting road, State Route 753. ODOT intended to construct a 12-foot-wide driveway within this 60-foot point of access. Even though the petition described a 60-foot point of access, "the court permitted [the property owner] to present evidence that the *only* access provided to the left residue was a 12-foot-wide field drive." (Emphasis sic.) *Id.* at ¶ 50. The court cited the following testimony:

> [DEFENSE COUNSEL]: Do you have an understanding that as a result of this project, [the property owner] will only be able to access this portion of the property though a 12-foot field drive * * *?
>
> [PROPERTY OWNER]: Yes.
>
> * * *
>
> [DEFENSE COUNSEL]: Specifically, when we are talking about this left residue that can only be accessed by the 12-foot gravel drive, do you consider it to be significantly less desirable farm ground as a result of this project?

[PROPERTY OWNER]:  We are not interested in farming it.

*Id.* at ¶ 59-61, 67-68.

{¶ 35}  The appellate court found that the trial court erred in admitting the foregoing testimony.  The court held:

> By permitting such evidence to be presented, the trial court improperly allowed the jury to consider whether ODOT's taking had reduced the point of access to 12 feet rather than the 60 feet expressly reserved in the Resolution and Finding filed with the complaint.  We therefore conclude that the trial court acted outside its jurisdiction when it allowed the jury to determine if there had been a taking beyond that described in ODOT's complaint for appropriation.

*Id.* at ¶ 69.

{¶ 36}  This case is unlike *Watkins-Alum Creek*.  In *Watkins-Alum Creek*, by testifying the residue could "only" be accessed through the 12-foot-wide driveway, the property owner conflated the physical driveway with the legal right of access.  The property owner should have explained to the jury that his physical access was a 12-foot-wide driveway, but he could seek ODOT's approval for wider driveway because he had a right of access that extended for 60 feet along State Route 753.  Instead, he wrongly limited his right to enter and exit his property to "only" the 12-foot-wide driveway.

{¶ 37}  In this case, however, ODOT points us to no testimony that the three driveways constituted the "only" access to the residues.  More importantly, the jury had evidence before it that Inland Products' legal right of access extended beyond the physical driveways.  As shown on the project plans provided to the jury, the stretch of the newly relocated Jackson Pike that will be built on Parcels 2-WD 1 and 2-WD 2 is marked "R/W," which indicates nonlimited access.  Both ODOT and Inland Products witnesses testified that a property owner can construct and connect a driveway to any part of a road designated nonlimited access if ODOT grants it approval to do so.  Consequently, the evidence demonstrated that the driveways shown on the project plans will not preclude Inland Products from exercising its legal right of access to Jackson Pike through different or modified driveways, subject to ODOT's regulatory authority.  Inland Products, therefore, did not lead the jury to believe that ODOT restricted Inland Products' legal right of access to Jackson Pike to the width of the physical driveways.

{¶ 38} ODOT also relies on *Thieken*, 4th Dist. No. 03CA33, 2004-Ohio-7281, to argue that the trial court erred in admitting evidence regarding the residue driveways. In that case, ODOT planned a highway improvement project that included the installation of concrete curbs along State Route 7, which abutted the defendant property owner's lot. ODOT filed a petition to appropriate a miniscule portion of the defendant property owner's lot and a temporary easement. The property owner argued that the installation of curbs in the right of way (and not on the property owner's lot) substantially and unreasonably interfered with his right of access. In response, ODOT argued that the court lacked subject-matter jurisdiction to determine if there was an additional taking beyond that described in the petition for appropriation. Over ODOT's objection, the trial court instructed the jury to consider whether ODOT had substantially and unreasonably interfered with the property owner's right of access by installing the curbs.

{¶ 39} On appeal, the Fourth District Court of Appeals held that the trial court erred in allowing the jury to determine if a taking of the property owner's right of access had occurred as a result of the installation of the curbs in the right of way. For our purposes, we find most pertinent the portion of the appellate decision that addressed the property owner's argument that the limitation of his access was a factor for the jury to consider when determining the damage to the residue. The decision cited the law regarding the determination of damages we set forth above. The court then stated:

> [I]f a partial taking affects the property owner's access to the remainder of the property, that factor can be considered in determining damage to the residue. * * * However, that is not the case here. [The property owner] offered no evidence establishing that the taking of the southeastern corner of his property or the taking of a temporary easement in his property affected his access to the remainder of the property. Rather, the trial evidence indicates that it is the curbing in the preexisting right of way along Route 7 that affects access to [the property owner's] property.

*Id.* at ¶ 25. Consequently, any injury suffered due to limitation of access was irrelevant in demonstrating damages resulting from the take described in the complaint.

{¶ 40} In the case at bar, as a result of the taking, ODOT plans to relocate Jackson Pike, reconfigure Frank Road, and modify the access to Inland Products' remaining property. Thus, this is not a case where an external traffic control device interferes with

ingress to and egress from the property. Here, unlike in *Thieken*, the taking itself affects access to the residues. Therefore, instead of supporting ODOT, *Thieken* supports Inland Products' position. *Thieken* held that a jury may consider limitation of access occasioned by a partial taking in determining the damages to the residue. The jury in this case, therefore, could consider the evidence regarding the residue driveways in determining the amount of damages to award Inland Products for the residues.

{¶ 41} ODOT replies by arguing that Supreme Court of Ohio rejected limitation of access as an element relevant to the consideration of appropriation damages in *Richley v. Jones*, 38 Ohio St.2d 64 (1974). In that case, the Supreme Court considered whether a property owner could recover damages for injury to the residue when the construction of a median in a road abutting the property prevented traffic from turning directly onto the property. The property owner argued that because a damages determination should include every element entering into the question of value, the change in traffic flow caused by the median was a necessary element for the jury to consider. The court disagreed with the property owner's argument. The court reasoned that a property owner is not entitled to damages for the same type of inconvenience shared in common with adjoining landowners, even if that inconvenience was coincident with an appropriation of land. Therefore, the property owner could not receive damages resulting from the increased difficulty in accessing his property.

{¶ 42} At best, *Jones* precluded the recovery of one type of "access" damage: injury to access of a kind that is shared in common with others. We do not interpret *Jones* as preventing all consideration of how a taking affects access to the residue in the determination of damages. *Jones* does not apply to the case at bar because the residue driveways, the source of Inland Products' access problems, affect Inland Products alone.

{¶ 43} In an appropriation case, the jury determines the amount of damages to the residue by deciding what damages are reasonable and foreseeable based on the evidence, including the project plans and specifications. *Pewamo*, 194 Ohio App.3d 57, 2011-Ohio-1758, at ¶ 25-26. Here, each side presented evidence from expert witnesses regarding their opinion of the amount of damage the residues will sustain as a result of the take. According to the evidence adduced by Inland Products, the residue driveways are inadequate for highway-oriented commercial use, which decreases the residues' value. ODOT introduced

evidence that Inland Products could seek approval for better driveways in the future, making an award of damages based on the inadequate driveways unreasonable. Inland Products countered with evidence casting doubt on the likelihood that ODOT would grant approval for better driveways. In the end, the jury was more persuaded by Inland Products' evidence, and it awarded Inland Products damages to the residue because of the size, location, and configuration of the residue driveways.

{¶ 44} ODOT, ultimately, would have this court ignore the precedent holding that a jury may consider the loss of ingress and egress when determining damage to the residue. Tellingly, ODOT never addressed that rule of law in its briefing. We, however, see no reason to depart from it. In deciding whether to purchase property, a reasonable businessperson would consider the quality of the property's access points, and the suitability of those access points for the property's intended purpose. Consequently, if a partial taking affects a property's access, a jury should be able to consider that in determining the damage to the residue. The trial court, therefore, did not err in admitting evidence regarding the residue driveways.

{¶ 45} For the foregoing reasons, we overrule ODOT's sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

————————————